## JOHN J. BURNS, Respondent, v. A. E. LIMERICK, Appellant.

### Kansas City Court of Appeals, February 16, 1914.

1. **DAMAGES: Warranties: Sale of Jack.** The plaintiff sued to recover damages for a breach of warranty in the sale of a jack, which he purchased from the defendant, at an auction sale, with a guaranty that the jack was a good performer and a sure breeder. *Held*, that any affirmation of fact and any promise by the seller relating to the goods is an express warranty, if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods relying thereon. Therefore, a breach of such warranty entitled the plaintiff to recover.

2. **INSTRUCTIONS: Representation: Warranty.** An instruction which states, that "if the jury believe defendant at the time of the sale stated or represented the jack to be a good performer and a sure foal getter and that plaintiff relied upon said statement or representation, if any, in purchasing said jack, then in law it constituted a warranty," is not erroneous where there is no dispute that the warranty was made, intended or understood, nor is it necessary that the instruction should include the care the jack received after the sale, because that element was not in the nature of a condition precedent to plaintiff's right to recover.

3. ——: ——: ——. An instruction was not improperly refused which told the jury that if they found that the only warranty defendant made was limited to sixty days, and that it was agreed that if the jack did not come up to the warranty he was to be returned within sixty days and was not so returned, the verdict must be for defendant, because a right of action for breach of warranty exists, notwithstanding the vendor expressly agreed to take back the animal if it failed to correspond to the warranty, nor is the retention a waiver of the warranty, but merely furnishes a cumulative remedy.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*N. T. Gentry* for appellant.

*McBaine & Clark* for respondent.

178 Mo. App. 10

TRIMBLE, J.—This is an action for damages for breach of warranty in the sale of a jack to plaintiff by defendant. Plaintiff obtained judgment in the sum of $350 and defendant has appealed.

Plaintiff, a farmer and stockman experienced in handling jacks, and living in Linn county, Missouri, received a catalogue announcing a public sale of some jacks in Boone county by defendant and one Bradford. These two were not partners but simply had a joint sale.

On the day before the sale plaintiff went to Boone county and to defendant's farm to look at the jacks advertised. He looked at the jack in controversy with a view of buying him and asked defendant about him. Defendant told him the jack was a good performer and a sure breeder. Plaintiff at the time had defendant's and Bradford's catalogue which described the jack in the following language:

"Here is a jack that makes them all sit up and take notice. He has two good ends and a good middle; a good jack for either mares or jennets. I bred two mares to this jack when he was two years old and got two mare mules. I was offered $200 for one when it was only two weeks old. This was the best mule colt I ever saw. Over 150 men saw this colt and they all said it was the best mule colt they ever saw. It was killed when it was three weeks old. The other colt sold for $155 at weaning time and weighed 630 pounds. I made a season last spring with this jack at fourteen dollars for mares, that is four dollars higher than any jack ever stood in this part of the country. He got more than he could do. There were twenty-eight jacks that stood within nine miles of me. That shows what the people think of him here. This jack had the pink-eye when he was a yearling and it left his eyes a little clouded. This does not hurt his usefulness at all. He can see to get around and go anywhere he wants to. He is a good performer and sure breeder. Any-

body can handle him with halter. Somebody will get a great bargain in this jack. My neighbors want me to keep this jack and agree to pay fifteen dollars to breed mares to him, but it don't suit me to stand stock and he will sell in sale for the high dollar.''

The next day plaintiff attended the sale, and when the jack in question was put up, the auctioneer read the foregoing description of the jack and stated that he was ''a good performer and sure breeder.'' The jack was finally knocked off to plaintiff for $1000 and he took him home caring for him in a proper manner, at least there was abundant evidence tending to show that he did.

The sale took place on February 2, 1911; the breeding season usually opens from about April 1, to April 10. The first opportunity plaintiff had to try the jack was on March 30. He would not perform. On April 2 he was tried again but did no better. On April 8, 1911, he was, with difficulty, induced to breed. After that, during that season, he bred 39 mares but only eleven had colts.

In the season of 1912, the jack bred fifty-five mares, but difficulty in getting him to perform was experienced every time. Plaintiff had written several letters to defendant about the jack, and on May 8th, he telephoned defendant and the latter sent a man to see what he could do with the jack, but he failed and returned home. In addition to this, there was ample evidence tending to show that he was not a good performer nor a sure breeder; that had he been as warranted he would have been worth what plaintiff paid for him, $1000, but was only worth $300 to $400. Defendant offered evidence tending to show that the failure of the jack to work was due to the way plaintiff handled him.

The catalogue also contained the following:

''We guarantee every animal to be as represented in the catalogue (subject to correction on day of sale),

and any animal that proves to not be as represented and returned to us in good health, condition and sound as when sold and within sixty days of date of purchase, we will replace him with another jack satisfactory to purchaser, or refund the money paid for said animal. Owing to Mr. Bradford's continued sickness we are unable to get all the pedigrees in this catalogue but expect to have them on the day of the sale.

A. E. LIMERICK,
W. E. BRADFORD."

Defendant's answer admitted the sale of the jack and denied generally the other allegations. It further set up that the only warranty or guaranty he made was the printed one just set out, and that plaintiff did not return said jack in sixty days as in said guaranty required and that he never offered to return said jack and never demanded that he be replaced with another; also that the jack's failure was the result of plaintiff's handling and treatment.

Defendant contends that it was error to admit evidence that on the day before the sale defendant told plaintiff, in answer to the latter's questions about the jack, that he was a good performer and a sure breeder. This contention is based on the view that the only warranty made was contained in the written statement of the catalogue last above quoted, and therefore all antecedent oral agreements are merged into the written one, and it cannot be enlarged, contradicted or varied from, but must constitute the sole evidence of the guaranty. This is undoubtedly the rule whenever a sale is made upon a written contract and the guaranty is contained therein, or when the terms of the guaranty are, by consent of both parties, reduced to writing and the sale is made on that guaranty. [Bates County Bank v. Anderson, 85 Mo. App. 351; Watson v. Roode, 30 Neb. 264; Seitz v. Refrigerator Co., 141 U. S. 510.] The basis of the rule is that when parties contract in

regard to a certain matter, *and reduce their agreement to writing,* the writing expresses their whole agreement in regard to that matter, and consequently only the writing can be looked to, and extrinsic evidence of a warranty *not mentioned in the writing* is not admissible. [Williston on Sales, Sec. 215.] But in this case the parties did not reduce their agreement to writing nor was the sale made on a written contract. The sale was made orally at public auction. And when the jack was put up, the auctioneer read the *description* of the jack, and stated that he was a good performer and a sure breeder, and the plaintiff bought relying on what the defendant, the auctioneer, and the catalogue said about the jack's qualities. There was nothing said at any time or anywhere about the warranty in the catalogue, nor that it was the only warranty defendant would make, nor that defendant would not be bound by any warranty unless the conditions specified in the catalogue were complied with. The statement concerning the jack was the same in the conversation with plaintiff the day before the sale that it was on the day of the sale; there was no contradiction, enlargement or variation of the warranty; all were to the effect that the jack was a good performer and a sure breeder. So that the statements made the day before were merely reiterated to plaintiff on the day of the sale and were, therefore, admissible as tending to establish a warranty. They became such because they were statements of a positive fact made to induce plaintiff to buy and upon which he relied in buying. [Lanmeier v. Dolph, 145 Mo. App. 78, l. c. 85; Faust v. Kerrs, 111 Mo. App. 560.] Williston on Sales, p. 245 says: "Any affirmation of fact and any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods and if the buyer purchased the goods relying thereon." And, in discussing the nature of the obligation of warranty, the

Burns v. Limerick.

same author on p. 251, says: "A positive representation of fact is enough to render him liable. The distinction between warranty and representation which is important in some branches of the law, is not appropriate here. The representation of fact, which induces a bargain is a warranty." Such statements could not be deemed mere antecedent representations because by being reiterated on the day of sale, they furnished a part of the contract when concluded. [Benj. on Sales, Sec. 610.]    The case of Ransberger v. Ing, 55 Mo. App. 621, merely held that an antecedent statement made in a handbill could not be declared a warranty because a warranty *is a part of the contract* and, as the evidence was conflicting as to whether there was a warranty *at the time of the sale,* the action of the trial court in declaring, as matter of law, that such antecedent representation constituted a warranty, was erroneous. But, in the case at bar, there was no dispute over the fact that the representations were made, at the time of the sale, that the jack was a good performer and a sure breeder. Neither can there be any doubt but that such statements were made *as warranties,* because they were the same as the representation in the catalogue and defendant had stated elsewhere therein that he guaranteed "every animal to be as represented in the catalogue (subject to correction on day of sale)." In the case of Buchanan v. Laber, 39 Wash. l. c. 413, cited by defendant in support of the point that where a printed catalogue contains the warranty parol evidence is not admissible, the sale was upon a written contract which referred to the printed catalogue for the terms of the warranty. Consequently, the catalogue warranty formed a part of the written contract between the parties, and to which both assented and by which both were bound. But, in the case at bar, there was no written contract between the parties.

Complaint is made of plaintiff's instruction No. 1 on the ground that it told the jury that if they believe defendant at the time of the sale stated or represented the jack to be a good performer and a sure foal getter and that plaintiff relied upon said statement or representation, if any, in purchasing said jack, then in law it constituted a warranty. The ground of the complaint is that the instruction omitted the element of intention on the part of defendant to warrant the jack.

Ordinarily this might be a fatal defect if there was any dispute over, or doubt about, the fact that a warranty was made, intended or understood. But there is no dispute over this fact. The printed statement in defendant's catalogue says he intended the representation of the jack to be a guarantee or warranty. Again, the statement or representation itself shows that it was not the expression of an opinion but was the positive statement of a fact. Plaintiff was buying a jack useful for one purpose only, namely, for breeding purposes. A statement that he was a good performer and a sure breeder was the statement of a fact. (Note what the catalogue said he had done the year before.) As the jack was suitable and was bought for only one purpose such a statement could only be made to induce plaintiff to buy, and both parties would understand that it would have that effect, and that without that assurance plaintiff would not buy. In other words, it was the positive statement of a fact forming part of the contract of sale itself, and was so from the very nature of the subject matter of the contract. Defendant, in making it, must be deemed to have made it intending plaintiff to rely on it and knowing that he would rely on it. In such case it is not the secret intent the seller may have in his mind that governs, but it is the legal intent, or the intention which the law affixes to what is said and done that determines the question of warranty or no warranty. As said in Williston on Sales, section 201, "best modern authorities

disregard the seller's intent. So far as the intent
spoken of by the courts is restricted to the meaning
of apparent intent to assert a fact, undoubtedly a real
requirement of the law of warranty is stated by the
word; but as the word "intent" naturally means
rather the seller's actual intent than the justifiable be-
lief of the buyer, and as intent to warrant seems to
mean intent to promise or enter into a contract quite as
naturally as intent to assert a fact, it is much better to
avoid the use of the word in this connection altogether
and the best modern authorities have reached this re-
sult." And on page 264, the same author, speaking of
positive statements of fact, says "The modern and bet-
ter view is that such a statement positively made in
such a way as to form part of the inducement of a sale
is necessarily a warranty." In Hoffman v. Dixon, 105
Wis. 315, l. c. 320, the court quoting from Benj. on
Sales, say: "The better class of cases hold that a
positive affirmation of a material fact as a fact, in-
tended to be relied upon as such and which is so relied
upon constitutes in law a warranty whether the vendor
mentally intended to warrant or not." In McClintock
v. Emick, 87 Ky. 160, l. c. 166, it is said: "It does not
depend upon whether the vendor intends to be bound by
his warranty or not, but upon whether he made an af-
firmation as to the condition of the article or merely
expressed an opinion as to it."

Nor was there a lack of evidence to show that
the representations were made at the time of the sale.

It was not necessary that said instruction No. 1
should include the care the jack received after the sale
because that element was not in the nature of a condi-
tion precedent to plaintiff's right to recover. It did
not form a part of plaintiff's case but was matter of
defense to be raised by defendant. It was so raised
and was submitted to the jury and by it decided ad-
versely to defendant.

Complaint is made of the court's action in refusing defendant's instruction No. 3 which told the jury that if they found that the only warranty defendant made was limited to sixty days and that it was agreed that if the jack did not come up to the warranty he was to be returned within sixty days and was not so returned, the verdict must be for defendant.

In the first place, this instruction left the jury to determine a question of law, namely, whether or not the oral representations and statements made by defendant and the auctioneer constituted warranties. In the next place, there was no evidence showing that the warranty in the catalogue was the only one by which defendant would be bound, nor that plaintiff agreed to be bound by the conditions named in the catalogue guaranty. This is not like a case where there is a written contract of sale embodying a conditional warranty as one of its terms and constituting the only warranty made and to which *both parties have agreed.* Such are the cases of Boyer v. Neel, 50 Mo. App. 26; Wood Mowing, etc., Co. v. Bobbst, 56 Mo. App. 427; Kingsland v. Board Bros., 60 Mo. App. 662; Kirk v. Seeley, 63 Mo. App. 262. The catalogue statements did not embrace the terms on which the jack was bought. Neither in the catalogue nor at the sale was it stated that sellers would not be held responsible on their representations unless the stock was returned in sixty days. There was no evidence that the jack was sold only on these conditions. And unless it was sold *only* on these conditions plaintiff would not be impliedly bound merely by buying at the sale. Because, under the law, plaintiff had the right, upon a breach of the warranty, to either keep the jack and sue for damages as he did in this case, or to return it and get his money back. These two courses were open to him unless he specially agreed in his contract to be restricted to only one of them. Now, in this case, the guaranty in the catalogue does not say he will be limited to the

remedy therein specified but merely gives an additional or cumulative remedy, to-wit, that if he will return it in sixty days he can get another animal in its place. In other words, the catalogue guaranty merely gave plaintiff the privilege of returning the jack in a specified time, but did not restrict him to that course. "The fact that under the contract of sale, the buyer has the privilege of returning the article does not make his retention thereof a waiver of the warranty but merely furnishes a cumulative remedy." [30 Am. & Eng. Ency. of Law (2 Ed.), p. 189.] Neither in the oral nor in the catalogue statement was there anything binding the purchaser to return the jack. As said in Moore v. Emerson, 63 Mo. App. 137, l. c. 139, "It does not contain any term or stipulation binding the purchaser to exercise the right to return the animal afforded him by the agreement of the vendor. Still less is there anything in the contract evidencing an agreement on the part of the purchaser to return the animal. As far as the obligations of the contract are concerned they are unilateral and rest upon the vendor. It is the well-settled law in this country that a right of action for breach of warranty exists, although the vendor expressly agreed to take back the animal if it failed to correspond to the warranty. In such case the right to return is merely a cumulative remedy. [McCormick v. Dunville, 36 Iowa, 645; Douglas, etc., Co. v. Gardner, 10 Cush. 88; Mandel v. Buttels, 21 Minn. 391; Perrine v. Serrell, 30 N. J. Law, 454.]" An examination of the language of the guaranty in the case at bar will disclose that it is almost identical with the guaranty in the Emmerson case. And it will also disclose that the guaranty cannot be considered to have been given with reference solely to defects arising within sixty days because the breeding season would hardly open in sixty days and, although plaintiff may have learned on March 30, that the jack refused to serve a particular mare, yet sixty days would not afford sufficient op-

·portunity to test his breeding powers. Again, the language of the catalogue. guaranty does not say "we ·guarantee every animal to be as represented *on condition, or provided that,* the purchaser returns him in sixty days." It says "we guarantee every animal to be as represented . . . *and* any animal that proves not to be as represented and is returned . . . within sixty days . . . we will replace . . . or refund the money."

It may be that the failure of the jack to work properly was the result of a change of scene or the manner of handling him. But this was for the jury, and its decision is conclusive on us. As a jack is affected by the influences produced by change of scene or climate and method of handling, the only way to avoid the risk of having the question of what causes him to fail as a breeder decided adversely to a vendor, is to sell the jack without a warranty or to so limit it as not to embrace a situation where he is taken to another place.

The judgment is affirmed. All concur.