Lee Barton v. C. P. Dowis, Preston Dowis and Junior Dowis, Appellants.

Division Two, June 25, 1926.

1. **SALE OF HOGS: Implied Warranty: Knowledge of Disease.** In the sale of animals the rule of **caveat emptor** applies, and there is no implied warranty that they are free from disease. That rule applies where the seller is ignorant of any disease with which the animal may be affected, and where both the seller and buyer are equally informed and have an equal opportunity for inspection of the animal. If the seller knows or has reason to know that the animal he sells is afflicted with a disease not known to the purchaser, and not discernable upon in·ction, he is guilty of fraud.

2. ———: ———: **Sold for Special Purpose: Breeding: Warranty Against Disease.** Where animals are sold for a special purpose it carries with it a warranty that they are fit for that purpose, but no warranty that they are fit for a different purpose. An implied warranty that hogs were fit for breeding purposes was not a warranty that they would not communicate disease to other hogs.

3. ———: ———: ———: **Hogs Sold for Breeding Purposes: Communication of Cholera to Others.** Where hogs were sold under an implied warranty that they were fit for breeding purposes, and there is no evidence that they were not good for breeding purposes, the buyer cannot recover damages for the death of other hogs on the theory that those purchased communicated cholera to such other hogs. The implied warranty that the purchased hogs were fit for breeding purposes cannot be construed as a covenant to hold the buyer harmless from any disease which the purchased hogs might communicate to the purchaser's other hogs. That could be covered only by an express warranty.

---

Corpus Juris-Cyc. References: Sales, 35 Cyc., p. 398, n. 25; p. 399, n. 37; p. 409, n. 95; p. 411, n. 1; p. 421, n. 64 New.

Transferred from Kansas City Court of Appeals.

Reversed and remanded.

*Cook & Cummins* for appellants.

(1) The giving of plaintiff's Instruction 1 was error. It authorizes a recovery on the theory of an implied warranty of the soundness of health of the hogs sold. In this particular sale, sold as these hogs were, there was no implied warranty of their soundness and freedom from disease; and it was error to instruct the jury that there was such a warranty. Tiedeman on Sales, sec. 190, 2 R. C. L., 1147; 24 R. C. L., 202; McQuade v. Ross, 39 Am. St. 864; Galbreath v. Carnes, 91 Mo. App. 512; Wells v. Wealch, 205 Mo. App. 136; Lindsey v. Davis, 30 Mo. 406; Matlock v. Myers, 64 Mo. 531; Anthony v. Potts, 63 Mo. App. 517; Giroux v. Steadman, 1 Am. St. (Mass.) 472. (2) Defendants' Instructions 5 and 6 should have been given. These refused instructions declare the law to be that if plaintiff can recover at all, it must be on proof of an express warranty of soundness. This is not an implied warranty case, and these two refused instructions so declare. Their refusal was error. Authorities cited above. (3) Defendants' refused Instructions 3 and 4 should have been given. These instructions advise the jury as to the legal effect of the use of the words "Cholera Immune" in the catalog. They point out that if these words were used to indicate vaccination, and were so understood by plaintiff, then such a use would not constitute a warranty. The defendants were entitled to have the jury so advised, and this refusal was error.

*DuBois & Miller* and *A. F. Harvey* for respondent.

(1) The evidence clearly shows that the hogs sold to plaintiff by the defendants were sold by the seller and purchased by the buyer for a special purpose, viz., breeding purposes, with the design of improving the herd of the plaintiff. Out of the 336 head of hogs on their farm defendants selected about 175 for a public sale for breeding purposes, and out of the 175 one of the defendants selected 10 or 12 for plaintiff and he purchased six of them. Under such circumstances the hogs were purchased for breeding purposes, a special purpose, and there is by law an implied warranty that they were fit and suitable for that purpose, and plaintiff's Instruction 1 was proper. Eisenbarger v. Wilhite, 238 S. W. (Mo. App.) 159; Neal v. Crowson, 231 S. W. (Mo. App.) 1033; Carney v. Swift & Co., 195 S. W. (Mo. App.) 511; Mason v. Crabtree, 186 S. W. (Mo. App.) 553; Dale v. Commission Co., 160 Mo. App. 314; Boston v. Alexander, 185 Mo. App. 16; Brown v. Welden, 99 Mo. 564; Comings v. Leedy, 114 Mo. 454; Laumeier v. Dolph, 145 Mo. App. 78; Moore v. Koger, 113 Mo. App. 428; Perry v. Van Matre, 176 Mo. App. 100; Miller & Co. v. Hunter, 82 Mo. App. 632; Cline v. Mock, 150 Mo. App. 431;

Clifton v. Sparks, 82 Mo. 115.  (2)  Plaintiff is entitled to recover damages resulting by reason of the diseased hog purchased having communicated such disease to his other hogs.  Snowden v. Waterman, 31 S. E. (Ga.) 110; McCann v. Ullman, 85 N. W. (Wis.) 493; Mitchell v. Pinckney, 104 N. W. (Iowa) 286; Stevens v. Bradley, 56 N. W. (Iowa) 429; Joy v. Bitzer, 41 N. W. (Iowa) 575; 35 Cyc. 476.  (3) The hogs having been sold for breeding purposes under the representation that they were "cholera immune" amounts in this case to no more than is included in the implied warranty—both express and implied warranties may exist.  National Cash Register Co. v. Layton, 232 S. W. 1091; Neal v. Crowson, 231 S. W. 1033; Perry v. Van Matre, 176 Mo. App. 106; Boulware v. Manufacturing Co., 152 Mo. App. 567, 163 Mo. App. 524.

WHITE, J.—The plaintiff recovered judgment in the Circuit Court of Nodaway County, for the sum of $1614.42, damages accruing on account of the death of his hogs from cholera, which he claims was caused by diseased hogs purchased from the defendants.

The case was first appealed to the Kansas City Court of Appeals, where the judgment of the trial court was affirmed.  That court deeming the opinion in conflict with that of the Springfield Court of Appeals in the case of Wells v. Welch, 205 Mo. App. 136, certified the case to this court.

In September, 1923, the plaintiff was tenant on a farm in Nodaway County, and had on hand at that time 133 head of Duroc hogs of various ages and sizes.  C. P. Dowis and the other defendants, his sons, owned a farm about six miles distant from that occupied by plaintiff, and were engaged in the business of raising and selling pure-blood Poland China hogs.

On September 26, 1923, Barton purchased of the defendants six hogs, it was claimed by plaintiff for breeding purposes.  On that day the defendants had 336 hogs for sale.

In the forenoon of the day of sale the plaintiff went to one of the defendants who selected ten or twelve hogs and informed Barton that they would be good hogs for him to buy.  Barton at the sale bought six of the hogs, five females and one male, and paid for them $112.50.  The plaintiff testified that he told the defendants his purpose in buying hogs was for breeding.  At the sale there was nothing in the appearance of the hogs to show that there was anything the matter with them.  About October 12th, following the sale of September 26th, one of Barton's hogs which had been running with the hogs purchased from Dowis became sick and died October 18th.  Another died November 4th.  On November 13th, Barton called Dr. Anderson, a veterinary, who examined the hogs and found that most of them were sick with cholera.  On November 15th, Barton

shipped 64 hogs to the Stock Yards in St. Joseph, and of the 64 hogs 40 were condemned as being affected with cholera, and with the exception of two sows and 18 small shoats the remainder of the 133 he had on his farm at the time died of cholera.

The hogs purchased at the sale by Barton from Dowis were healthy, with the exception of one sow, which became sick but did not die, remained sick for a long time, and in February was sold by Barton for nine dollars. None of the others became sick.

On September 3rd, twenty-three days before the sale, the defendants had a veterinary come to the farm and vaccinate 220 of their hogs for cholera immunization, by what is called the double treatment. He also vaccinated 20 old sows by what is called the single treatment. These treatments are explained. The single treatment consists in injecting a serum which is described as the blood of an immune hog. This treatment makes a hog immune from cholera for about thirty days. The double treatment consists of administering the serum and at the same time the virus of cholera, which is blood taken from a hog afflicted with cholera. If the virus were injected singly it would produce cholera, but injected with the serum it produces a slight form of cholera in the hog from which it speedily recovers. The double treatment makes the hog permanently immune from cholera. Occasionally cholera becomes virulent in a case of double treatment, but such cases are said to be so rare as to be negligible. The hogs which were vaccinated with the single treatment were kept separate from the 220 hogs vaccinated with the double treatment; the six hogs purchased by Barton had received the double treatment. The evidence was conflicting as to whether they all received the double treatment September 3rd. There was evidence to indicate that it was administered only eight days before the sale. There was also evidence to show that other persons at that sale bought hogs which had received the single treatment, and which afterwards died of cholera.

The evidence of experts was to the effect that a hog vaccinated with double treatment becomes immune from cholera within 14 to 21 days after vaccination, and the light attack of cholera caused by it is ended within that time if the treatment is effective.

The defendants in a printed catalog listing their hogs stated: "All hogs cholera immune." The auctioneer in crying the sale called attention to that statement in the catalog. We have given this evidence as it appears in the record most favorable to the plaintiff. The defendant offered a number of witnesses to show that his hogs were in good condition at the time of the sale, and that there was no cholera in the neighborhood or on his farm at the time.

I. The petition pleaded both an express warranty and an implied warranty. An express warranty because of the statement that the

hogs were not afflicted with cholera, and an implied warranty that they were fit for breeding purposes, for which they were purchased.

There was evidence explanatory of the meaning of the expression ''cholera immune'' as understood by hog raisers. Plaintiff offered evidence to show that the term meant hogs free from cholera infection, and it was therefore a warranty of immunity. Defendants offered evidence of hog raisers to show that it meant hogs which had received the immunizing double treatment.

It appears from the record that when the case was submitted to the jury the plaintiff abandoned his claim for damages on account of the express warranty, and it was submitted solely on the theory of an implied warranty. Instruction 1, given on behalf of the plaintiff, authorized the jury, if they found Barton purchased hogs from the defendant for breeding purposes, and defendants knew they were purchased for such purpose, and if they found that at the time of such purchase or sale said hogs or any of them, either with or without defendants' knowledge, were affected with a contagious disease commonly called ''hog cholera,'' and that the hogs already owned by the plaintiff thereby contracted the contagion and were lost to the plaintiff, the plaintiff could recover the damage ensuing.

The defendant offered instructions to the effect that the plaintiff was not entitled to recover by reason of an implied warranty, but if the plaintiff could recover at all it would be only by proving an express warranty of the soundness of the hogs. Those instructions were refused by the court, thus limiting the issues submitted to the jury. All that is said in regard to the express warranty by use of the words ''cholera immune'' in the catalog is eliminated from consideration. We have only the case submitted upon the issue of an implied warranty of the hogs as being fit for breeding purposes.

II. In the sale of animals the rule of *caveat emptor* applies, and there is no implied warranty that the animals are free from disease. [Lindsay v. Davis, 30 Mo. 406; Matlock v. Myers, 64 Mo. 531; Wells v. Welch, 205 Mo. App. 136; Hunter v. Waterloo Gasoline Engine Co., 260 S. W. 970, l. c. 972; Thompson v. Mizer, 19 Ann. C. 871; Neal v. Crowson, 231 S. W. 1033, and cases cited in the note.] That, of course, applies where the seller is ignorant of any disease with which the animal may be affected, and where both the seller and the buyer are equally informed and have equal opportunities for inspection of the animal. If the seller knows or has reason to know the animal he sells is afflicted with a disease not known to the purchaser, and not discernible on inspection, he is guilty of fraud.

III. Where an article is sold for a special purpose it carries with it a warranty that it is fit for that purpose. And that applies to animals. [Cline v. Mock, 150 Mo. App. 431; Todd v. Monsees, 160

Mo. App. 310; Lindsborg M. & E. Co. v. Danzero, 189 Mo. App. 154; Busch & Latta Paint Co. v. Woermann Const. Co., 276 S. W. l. c. 618.] This is especially true of the manufacturer or producer of an article. There was sufficient evidence in this case to authorize a finding that the defendants were hog raisers; that they were in that business, and that they sold the hogs in question as breeding stock of the variety represented.

IV. A warranty in case of sales is collateral to the agreement of sale. It is in the nature of a covenant against failure of the article for a certain, specific purpose or for a certain, specific reason. If a manufacturer warrants his machine to do good work of a certain character, that is no warranty that it will do good work of a different character. The implied warranty that the hogs purchased by plaintiff were fit for breeding purposes was not a warranty that they would not communicate a disease to other hogs. A warrantor is bound only by the terms of his covenant. If the hogs were afflicted with disease which rendered them unfit for breeding purposes, then that defect, it may be conceded, would be covered by the implied warranty. That warranty means that they were healthy and capable of procreation; that they would reproduce the kind and variety they were represented to be. There is no evidence to show that the hogs purchased by the plaintiffs were not good for breeding purposes; the purpose for which they were bought.

Where a stallion was purchased for breeding purposes, carrying an implied warranty, the contract did not include a warranty that he was free from a disease which would be transmitted to an offspring. [Briggs v. Hunton, 47 Am. St. Rep. 318, 87 Me. 145. See also 24 R. C. L. 202; Johansmeyer v. Kearney, 76 N. Y. Supp. 930.]

The implied warranty that the hogs were good for breeding could not by any stretch be construed as a covenant to hold the plaintiff harmless from any disease which the purchased hogs might have communicated to his other herd. That could be covered only by the express warranty pleaded, which the plaintiff abandoned in submitting his case. Under the evidence, the only damage that could have accrued to plaintiff by reason of the breach of warranty submitted was the sickness and incapacity of one of the hogs which the plaintiff claims became of no particular value and was sold for small price.

The judgment is reversed and the cause remanded. All concur.