G. W. Snadon et al., Co-partners doing Business under the Name and Firm Style of G. W. Snadon & Sons, Respondents, v. Herbert V. Jones and J. C. Nichols, University Trustees under the Will of William Rockhill Nelson, Deceased, Appellants.—136 S. W. (2d) 127.

Kansas City Court of Appeals. December 4, 1939.

*Wilson, Bundschu & Bailey* for appellants.

*Cornelius Roach* for respondents.

CAMPBELL, C.—Plaintiffs owned and operated a large farm, upon which they maintained a herd of purebred shorthorn cattle for breeding purposes. The defendants Herbert V. Jones and J. C. Nichols, in virtue of the provisions of the will of William Rockhill Nelson, deceased, are trustees and managed and operated the Sni-a-Bar farms, a tract of land consisting of approximately 2000 acres, upon which they maintain herds of purebred cattle for breeding purposes. In June, 1934, plaintiffs bought from defendants at their said farms a purebred shorthorn heifer thirteen months old, named Generosity V, for the price of $112.50, and the further consideration (according to plaintiffs) that defendants agreed to keep said heifer on their farms until it was bred to a certain bull and was sound with calf. The heifer remained on defendants' said farm until she was bred to the bull agreed upon by the parties.

Defendants by letter dated April 2, 1935, informed plaintiffs they believed the heifer was "safe" and that plaintiffs "could send for heifer any time." When plaintiffs, in response to the letter, went to defendants' farm to get the heifer, the defendants' manager thought it best to retain her because he was not certain she was with calf. In November, 1935, plaintiffs, at the request of the defendants, took the heifer to their farm where she, five days later, aborted, due to Bang's disease.

Thereafter, this suit was brought to recover damages caused by the alleged negligence of defendants in that they sold and delivered the heifer in violation of the provisions of section 12820, Revised Statutes 1929; that at the time defendants delivered the heifer to plaintiffs they knew or by the exercise of reasonable care could have known she had Bang's disease; that defendants at said time negligently failed to examine the heifer for Bang's disease, and carelessly allowed and permitted the heifer while she remained in their possession, after plaintiffs purchased her, to be infected with Bang's disease.

The petition further alleged that by reason of said negligence and as the direct result thereof, plaintiffs' herd of cattle became infected with Bang's disease and the value of their herd greatly reduced, to their damage in the amount of $2000.

The answer was a general denial. Trial with a jury resulted in a verdict for plaintiffs for $1750. Upon suggestion by the court

plaintiffs remitted $1000 and judgment was thereupon rendered for $750. The defendants have appealed.

The evidentiary facts hereinbefore stated appear in the evidence introduced by the plaintiffs or they are not in controversy. Plaintiffs' evidence further shows that on the next day after the heifer aborted they had her examined and treated by Dr. Baker, a deputy state veterinarian. He testified that he removed the afterbirth from the heifer, and that he "suspicioned Bang's disease;" that he tested the heifer some thirty or forty days later (which was the proper waiting period) and found she was infected with Bang's disease; that in April, 1936, he tested plaintiffs' breeding cows and their bull, found "two suspects" and one that had Bang's disease; that he tested plaintiffs' herd October 12, 1935, and on several occasions prior to that date and found it clean; that proper practice required that a herd of purebreds be tested for Bang's disease once or twice a year and a suspected or infected herd "every thirty to sixty days."

The defendants' evidence shows that Sni-a-Bar farms was scientifically operated; that the Federal and State Governments each maintained a trained representative who cooperated with defendants in the work of breeding purebred cattle; that the 2000-acre tract maintained by them was divided into several tracts, each separated from the other by a fence; that infected animals were sold for slaughter or were segregated and kept with at least one field between them and the clean cattle; that the heifer in question never came in contact or had opportunity to come in contact with any infected cattle. The evidence further shows the heifer was tested in May, 1934, and in May, 1935, and found clean. She was not tested thereafter. The defendants' manager, in giving his testimony, said that the law of Texas required cattle to be tested for Bang's disease twenty-one days prior to shipment into that state; that the test period for shipment into Kansas was by the law of that state thirty days. And—

"Q. Well, if it is good practice as required by the law to test an animal that is going to be shipped over in Kansas, why isn't it equally good practice to test an animal that is going to be shipped from your farm to some other place in the State of Missouri? A. It is good practice. But if the animal is sold and it is the other man's property, it is his precaution; not ours."

The manager further testified defendants always tested an animal before transferring it from one herd to another; that every animal brought onto the farms "has to pass a clean test."

Further pertinent evidence will be stated in the course of the opinion.

The defendants at the close of the evidence requested verdict be directed for them. The request was refused. Error is assigned to the ruling.

In determining whether or not the case was one for the jury we

must assume as true the evidence favorable to the plaintiffs and reject the defendants' evidence unless such evidence aids the plaintiffs' case. [Clark v. Atchison & Eastern Bridge Co., 24 S. W. (2d) 143; Ingram v. Mobile & O. R. Co., 30 S. W. (2d) 989.]

From the time plaintiffs paid for the heifer in June, 1934, until they received her in November, 1935, the defendants were bailees and under duty to plaintiffs to exercise the same care which an ordinarily prudent person would exercise in caring for his own property; and this is true "whether the bailment was for hire or gratuitous." [H. Levi & Co. v. M., K. & T. Ry. Co., 157 Mo. App. 536, 138 S. W. 699.]

The evidence shows the heifer had Bang's disease when she was delivered to the plaintiffs, but there is no evidence showing the defendants knew that fact. Plaintiffs' evidence to the effect that an infected herd should be tested every thirty to sixty days and a clean herd once or twice a year does not aid plaintiffs' case for the reason there was no showing that the herd, of which Generosity V was one, was an infected herd; and that testing annually would be testing "once or twice" a year. There was evidence sufficient to allow the jury to find that if the heifer had been tested shortly before she was delivered to the plaintiffs, the presence of the disease would have been disclosed. If, therefore, due care required the defendants to test the heifer before delivering her, the same as they would have done if they had been shipping her, then the failure to test was a failure to exercise care in discharging their duty as bailees.

The defendants' manager testified that it was good practice to test an animal that was going to be shipped from the farms to another place in Missouri, "But if the animal is sold and it is the other man's property, it is his precaution; not ours." If good practice required the defendants to test the heifer before she was delivered to the plaintiffs, then the defendants should have tested her.

Defendants tested the heifer in May, 1935, "along with the other cattle." When the manager said it was good practice to test an animal before shipping it from the farms to another place in Missouri he evidently meant that defendants tested an animal before they shipped it from the farms to another point in Missouri. Generosity V was not "shipped" by the defendants; she was delivered at the farms and transported by plaintiffs to their farm. There was no evidence showing the custom and practice with respect to testing in a situation similar to the present one.

The manager further stated in effect that plaintiffs, the owners of the heifer, were under duty to determine when she should be tested. If this statement were correct, and there was no evidence to the contrary, the failure to test the heifer at time of delivery was not negligence on the part of defendants.

The fact defendants considered it good practice for them to test an animal before receiving it at the farm, and before moving it from

one field to another, does not aid the plaintiffs' case for the reason that if such testing was good practice then it was the duty of plaintiffs to test the heifer before taking her to their farm or to have ascertained whether she had been tested. Were we to say plaintiffs could receive the heifer without testing her or ascertaining whether she had been tested in due time, then we would in result say the law did not require them to manifest interest in their own affairs.

The Supreme Court in the case of Barton v. Dorvis, 285 S. W. 988, held that the seller of a diseased animal cannot be held liable upon the theory of implied warranty unless he "knows, or has reason to know, the animal he sells is afflicted with a disease not known to the purchaser, and not discernible on inspection. . . ."

While the transaction in question was a bailment, not a sale, the legal principle announced in the Barton case, *supra*, is controlling; that is, defendants cannot be adjudged liable unless they knew or had cause to know the heifer was diseased, or that they failed to care for the heifer as an ordinarily careful person would have cared for her. The only evidence concerning the care exercised by the defendants during the period of the bailment was to the effect they cared for the heifer in the same manner in which they cared for their own cattle which were in the field with her. There was no evidence to the effect that defendants were negligent in caring for their own cattle.

The defendants insisted plaintiffs were guilty of contributory negligence.

Plaintiff T. M. Snadon testified the heifer was taken to plaintiffs' farm and put into a lot with some calves; that about five days later she lost her calf; that "we turned her in the pasture with some cows after she lost this calf, for a few days. . . . We didn't know she had Bang's then."

Plaintiff W. M. Snadon testified that on the morning of the abortion the heifer was in a "lot with three milking cows," and remained with them until she was "cleaned up."

The negligence of plaintiffs, if any, consisted in permitting the heifer to come in contact with other cows on the farm before testing her or after they discovered she had lost her calf. They did not know she was infected until some thirty days after the abortion; and it may be inferred the cows were in the lot with the heifer at the time of the abortion and that the infection may have been spread at that time, which was prior to the time plaintiffs knew of the abortion. We cannot say the plaintiffs were negligent as a matter of law.

The plaintiffs cite the case of Corbin v. Gentry et al., 167 S. W. 1144, in support of their contention that upon proof of the bailment and delivery of the heifer in a diseased condition they made a *prima facie* case and the burden of going forward with the evidence shifted to the defendants. The petition charged specific negligence and, therefore, the rule of *res ipsa loquitur* does not apply. The burden

946

of proving the alleged negligence was upon the plaintiffs. [Freeman v. Foreman, 141 Mo. App. 359, 125 S. W. 524.]

Further, in the evidence of Dr. Baker, is the following: "Q. In your experience, I mean, don't you find that the disease (Bangs) is such that it breaks out sometimes without any apparent cause for it? A. Oh yes. Sometimes you can't trace it, where it was picked up." The defendants' evidence on that subject was to the same effect. Thus it is plain the disease may become prevalent in a herd which had theretofore been clean and the cause or origin of the infection cannot be ascertained. From such facts it is plain that upon proof the heifer was infested when delivered, the burden of going forward with the evidence did not shift to the defendants.

We conclude the negligence charged was not supported by proof, from which it follows the request for directed verdict should have been given.

The judgment is reversed and the cause remanded. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur.