James MITCHELL (Plaintiff), Respondent,

v.

Henry RUDASILL (Defendant), Appellant.

Nos. 30404, 30411.

St. Louis Court of Appeals.

Missouri.

Feb. 16, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied March 7, 1960.

C. M. Hulen, Jr., Moberly, for defendant-appellant.

Falzone & Falzone, Moberly, for plaintiff-respondent.

DOERNER, Commissioner.

Defendant appeals from a verdict and judgment for $1,528.16 rendered against him in an action growing out of the sale of certain cows to plaintiff.

Plaintiff, a farmer, decided to concentrate on dairy cattle in order to obtain a more stable and increased income through the sale of milk. After discussing his plan with defendant, a dealer in cattle, plaintiff sold his beef cattle and on Friday, August 23, 1957 selected twelve cows out of the herd which defendant had on hand. The price agreed upon was $1,925, and on the next day defendant delivered the cows to plaintiff's farm. In accordance with their understanding, on the following Monday, August 26, plaintiff executed and delivered to defendant a note for the above amount, secured by a chattel mortgage not only on the twelve cows plaintiff had purchased from defendant, but also on the eight milk cows which plaintiff had originally owned.

In his petition, and in one count, plaintiff alleged that at the time of the sale defendant knew that plaintiff desired the cows to be added to plaintiff's dairy herd, for the purpose of producing and selling clean and healthful milk; that defendant impliedly warranted that each of the cows sold was in a fit and proper condition for that purpose; that defendant expressly warranted that the cows sold were in a fit and proper condition for the same purpose; and that at the time the cows were sold some of them were diseased with mastitis, which was not known by plaintiff, and were thereby wholly unfit for the purpose for which they were sold. Plaintiff also alleged, in the same count, that defendant knew of the diseased condition of the cows at the time of the sale, fraudulently failed to inform plaintiff of that fact, and fraudulently misrepresented their condition. Defendant in his answer admitted having sold the cows to plaintiff, and denied the remainder of plaintiff's allegations.

Thus plaintiff pleaded an implied warranty, an express warranty, and fraud. However, the issue as to fraud was withdrawn at the end of plaintiff's evidence. At the close of all of the evidence the trial court sustained defendant's motion to require plaintiff to elect as to whether he would submit to the jury the issue of express warranty or that of implied warranty. Defendant also filed, and the court overruled, a motion to dismiss plaintiff's cause of action on the grounds that plaintiff could not maintain his cause of action of implied warranty. Plaintiff submitted his case by Instruction A, which informed the jury that if it found that the defendant knew that the cows purchased from defendant were to be used by plaintiff for the produc-

tion of milk for sale purposes, that one or more of said cows suffered from mastitis, and that by reason of said disease such cow or cows were unsuitable for the production of milk for sale purposes, then its verdict might be in favor of plaintiff. Hence, plaintiff submitted his case to the jury on the theory of implied warranty.

Defendant contends that if there was any warranty in connection with his sale of the cows to plaintiff it was an express warranty, and that the court below erred in permitting plaintiff to submit his case on the theory of an implied warranty. In support of his position defendant points to plaintiff's own testimony as to the conversation which occurred between plaintiff and defendant at the time of the sale. On his direct examination plaintiff testified:

"Q. Now, did you have any conversation with Mr. Rudasill as to whether he would guarantee these cattle or not? A. Yes.

"Q. Just tell the jury what warranties or guarantees he did make at that time? A. Well, I just told him, I said 'you know this is a little high for cows', for at that time it was. He said 'you don't have a thing to worry about', he says, 'I have sold a world of cattle' and he said 'I will guarantee them'. I said, 'what do you mean by guarantee?' He said 'well, what are you buying them for?' And I told him to milk. 'Well', he said, 'I will guarantee their bags to be sound and give a decent flow of milk'. If not, he would take the cow back and give me another cow or refund my money. And I told him there wasn't no money changed hands, and he said 'Well, I will give you credit on the note'."

\*    \*    \*    \*    \*    \*

"Q. What, if anything, was said between you and Mr. Rudasill about any disease the cattle might have, such as

TB, bangs, mastitis or anything along that line? A. Well, we just never mentioned that. Now, that wasn't mentioned."

On cross-examination plaintiff related the conversation in these words:

"Q. Well, just tell us what you do remember? A. Well, he told me to just take the cows and freshen them and if they proved out all right and had good udders—if they didnt prove out all right, rather, and have good udders, why, bring them back and he would give me—in other words, he would give me credit on the back of my note, or give me another cow, wasn't no definite time set when, or what.

"Q. In other words, he just said you take the cows, you go ahead and freshen them, and after you freshen them, if there is something wrong with them after you freshen them, why, you bring them back and I will give you another cow or give you credit on your note, is that right? A. That's right.

"Q. He didn't tell you to bring them back after the second calf, did he? A. Oh, no, that wouldn't be quite in reason.

"Q. No, but you don't remember anything about you saying that 'these cows are guaranteed and if I don't like them, I will bring them back,' and Mr. Rudasill telling you at that time, 'no, no guarantee like that'? A. No, he didn't say there is no guarantee. He sold the cows on a guarantee.

"Q. Guarantee of what? A. That their bags would be sound in every way, shape and form, and they would produce a reasonable amount of milk."

In 77 C.J.S. Sales § 301, pp. 1115–1117, the terms "express" and "implied" warranties are defined as follows:

"A warranty is a statement or representation made by the seller of goods,

contemporaneously with, and as a part of, the contract of sale, although collateral to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises or undertakes to insure that certain facts are or shall be as he then represents them. A warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the treaty of sale, on which it is intended that the buyer shall rely in making the purchase; and there is authority for the proposition that any warranty derived from express language should be considered an express warranty. A warranty is implied when the law derives it by implication or inference from the nature of the transaction, or the relative situation or circumstances of the parties. Stated otherwise, an express warranty is one imposed by the parties to the contract, while an implied warranty is not one of the contractual elements of an agreement but is, instead, imposed by law."

■ Judged in the light of those principles, it is apparent that plaintiff proved an express, not an implied warranty. According to plaintiff's own testimony, defendant guaranteed the bags of the cows to be sound, and that the cows would give a decent flow of milk. Such a statement, made by defendant with knowledge that the cows were to be used for the production of milk for sale, constituted an express warranty by defendant that the cows were fit and suitable for that purpose. Burns v. Limerick, 178 Mo.App. 145, 165 S.W. 1166; Young v. Van Natta, 113 Mo.App. 550, 88 S.W. 123; Faust v. Koers, 111 Mo.App. 560, 86 S.W. 278. It was not necessary that plaintiff's evidence show that defendant had specifically guaranteed against mastitis. It was only necessary for plaintiff's evidence to show, as it did, that the udders of a cow afflicted with mastitis were not sound, and that a cow so diseased would not give a reasonable amount of milk. As was said in Turner v. Central Hardware Co., 353 Mo. 1182, 186 S.W.2d 603, 607, 158 A.L.R. 1402:

"* * * But for the affirmation to constitute a warranty against so specific a defect it is not necessary that the defect be named. If there was a specific affirmation or representation of fact that the ladder was safe or sound there was an express warranty of safety or soundness which includes and covers the latent defect of cross-grained wood."

■■ But it does not necessarily follow in this case that the judgment must be reversed because the plaintiff submitted his case on the theory of an implied warranty rather than that of an express warranty. While it has been stated, as defendant urges, that an express warranty excludes an implied warranty, this has been criticized as too broad a statement of the rule. Williston on Sales, Rev.Ed., Vol. 1, p. 625, Sec. 239a. A more accurate statement of the correct rule is that an express warranty excludes an implied warranty of fitness (1) if the express warranty is inconsistent with the warranty which would have been implied had none been expressed; or (2) if the express warranty relates to the same or a similar subject matter as one which would have been implied. 164 A.L.R., p. 1328; Williston on Sales, supra; 2 Mechem on Sales, p. 1095, Sec. 1259. In the principal case cited by defendant, Hunt v. Sanders, 313 Mo. 169, 281 S.W. 422, 425, after stating the general rule, the court went on to say:

"* * * Where the warranty expressly agreed upon is precisely the same as the one the law would imply from the mere fact of sale, in case of breach it can be of no consequence whether the warranty be regarded as express or as implied. In such case the distinction is without importance except as to the matter of proof."

A case more nearly in point is Perry v. Van Matre, 176 Mo.App. 100, 161 S.W.

643, in which plaintiff, the seller, sued on a note given by the defendant as the purchase price of two jacks. Defendant claimed, and at the trial testified, that plaintiff had expressly warranted the breeding qualities of the jacks, and that subsequent to the sale one of them proved to be worthless for that purpose, and had sickened and died from a latent disease with which he was afflicted at the time of the sale. In his testimony plaintiff did not deny having made the warranty claimed by defendant, but claimed that there had been no breach. Defendant submitted two instructions to the jury, one on a breach of the warranty implied because of plaintiff's knowledge of the purpose for which the jack was to be used, and the other on a breach of the express warranty. On appeal, plaintiff claimed error because defendant had submitted on the implied warranty, since he had proven an express warranty. The court there held that while the case should have been submitted only on the express warranty, the error was nonprejudicial because the express and implied warranty were the same; and that no prejudice to plaintiff having occurred, the judgment would not be reversed because of the harmless error.

In the instant case, defendant's version of the statement he made at the time of the sale was that he told the plaintiff "We sell cows this way, when they come fresh you keep them a week or ten days, give them a chance for their udders to clear up, and if it doesn't clear up, bring her back but be sure and bring the calf with her as we don't take any cows back unless they bring their calves." This is substantially the same as the express warranty testified to by plaintiff. Furthermore, defendant admitted knowing at the time of the sale that plaintiff was purchasing the cows for the production and sale of milk. In view of such knowledge of the special purpose for which plaintiff was purchasing the cows, the law would have implied a warranty of fitness and suitability, in the absence of any affirmation. As was said in Barton v. Dowis,

315 Mo. 226, 285 S.W. 988, 989, 51 A.L.R. 494:

"  *   *   * Where an article is sold for a special purpose, it carries with it a warranty that it is fit for that purpose. And that applies to animals."

Thus, the express warranty which defendant admitted making is precisely the same as the implied warranty on which plaintiff submitted his case. The only difference is that in the case of the express warranty as testified to by both plaintiff and defendant, the plaintiff, in the event a cow proved to be unsound, was to return the cow and her calf to defendant, and to exchange it for another. There was evidence by plaintiff that this was done until, as he claimed, the defendant ordered him not to return with any more cows. We also gather from plaintiff's testimony that eventually an agreement was reached through the parties' attorneys regarding the sale of the cows plaintiff still had on hand, and the application of the proceeds on the note held by defendant. In any event, defendant raises no point about plaintiff's failure to return an unsound cow for a sound one, nor does he point out in what manner he was prejudiced by the submission of the case on the implied warranty. Our statute provides that we should not reverse a judgment, even though error was committed in the trial court, unless such error materially affected the appellant. Section 512.160 RSMo 1949, V.A.M.S. Under the peculiar circumstances of this case, the judgment should not be reversed, because the error was nonprejudicial. Perry v. Van Matre, supra.

■ A more serious question arises with respect to the question of damages. In the latter part of plaintiff's Instruction A the jury was informed that if the plaintiff's original herd of cattle became infected with mastitis as a direct result of bringing the purchased cows, afflicted with that disease, upon plaintiff's farm, then the jury's verdict should be for the plaintiff. And in plaintiff's Instruction C, on damages, the jury

was instructed that in arriving at plaintiff's damages it should, as to his original cows, allow plaintiff the difference between the reasonable market value of such cows immediately before they became infected from the purchased cows and the reasonable market value immediately after they became so diseased. Defendant argues that even if there was a warranty that the cows sold by him were suitable for dairy purposes, there was no warranty that such cows, if afflicted with mastitis, would not infect plaintiff's original herd with that disease.

■ The question thus presented is whether in the event of a breach of a warranty, consequential or special damages may be recovered. Defendant cites us to Barton v. Dowis, supra; State ex rel. Jones Store Co. v. Shain, 352 Mo. 630, 179 S.W.2d 19; Snadon v. Jones, 234 Mo.App. 939, 136 S.W.2d 127; and Moore v. Miller, Mo.App., 100 S.W.2d 331. None of these cases pass upon that issue. While there is certain language in Barton v. Dowis which on a casual reading might seem to support defendant's position, on a closer study of that case it will be found that all that the court there held was that there was no evidence that the implied warranty (of the soundness of hogs for breeding purposes) had been breached; and that there therefore could be no recovery.

Nor do the cases cited by plaintiff, Cline v. Mock and Knight, 150 Mo.App. 431, 131 S.W. 710; Dale v. Pierson-Brewen Commission Co., 160 Mo.App. 314, 142 S.W. 745; Eisenbarger v. Wilhite, Mo.App., 238 S.W. 159; Altenderfer v. Harkins, Mo. App., 243 S.W.2d 558, decide or discuss the problem. We turn, then, to other authorities for the solution.

In Williston on Sales, Vol. 3, Rev.Ed., Sec. 614, pp. 371, 372, it is said:

"One who warrants goods to possess a certain quality is held to an extensive liability for consequential damages for breach of the warranty. The nature of the warranty often gives notice to the seller of the probable consequences of a breach. He can more readily foresee injurious consequences from a breach of his obligation than an ordinary contractor. Perhaps also the close relation between an action for breach of warranty and the law of torts has been influential. Many illustrations can be given.

"If consequential damages are natural consequences of a breach of warranty, the plaintiff is generally allowed to recover them. One who sells an animal warranting it to be sound, when in fact it is infected with disease, is responsible for expense incurred for medicine and medical attendance, and for damages resulting from a communication of the disease to the buyer's other animals."

To the same effect is 2 Mechem on Sales, Sec. 1825, pp. 1456, 1457, where the author, in giving illustrations of damages recoverable under a warranty for a special purpose, states:

"For like reasons, the seller of diseased animals is liable not only for the loss of the animals infected, but also for other animals of the buyer to which without his fault the disease is communicated by those bought."

See also 77 C.J.S. Sales § 374 et seq., and 46 Amer.Jur., Sec. 741, et seq. The rule is not, of course, without its limitations. The damages sought cannot be remote or beyond the contemplation of the parties at the time of the sale. Williston, supra, Sections 614a and b. In the instant case the spread of mastitis to plaintiff's original herd was neither, and the submission of the issue to the jury was therefore proper.

■ Defendant's final assignment is that the evidence was insufficient to submit to the jury the question of whether one or more of the cows sold was infected with

mastitis at the time of the sale. To the contrary, plaintiff's evidence was that two of the heifers, when milked on the day of delivery, exhibited certain symptoms which Dr. Bussett, the veterinarian, testified would, in his opinion, be an indication of mastitis. Furthermore, on examining some of the purchased cows later, after they became fresh, Dr. Busset found them suffering from chronic mastitis, which he described as a flare-up, usually in the first week or so of lactation, of a latent condition of the disease. Such evidence was sufficient to submit to the jury the issue as to whether one or more of the cows sold by defendant was infected with mastitis at the time of the sale.

For the foregoing reasons, it is the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

The judgment is, accordingly, affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.