**MARYLAND CAFETERIA, INC., a corporation, Plaintiff-Appellant,**

v.

**MIDWEST FIRE PROTECTION, INC., a corporation, Defendant-Respondent.**

No. 36348.

Missouri Court of Appeals,
St. Louis District,
Division Four.

April 13, 1976.

Murphy & Schlapprizzi, Cornelius T. Lane, Jr., St. Louis, for plaintiff-appellant.

Evans & Dixon, Eugene K. Buckley, St. Louis, for defendant-respondent.

ALDEN A. STOCKARD, Special Judge.

In plaintiff's suit for damages for breach of warranty, or in the alternative for negligence, the trial court directed a verdict for

defendant and plaintiff has appealed. We affirm.

Plaintiff operated a restaurant and cafeteria at 205 North Ninth Street, in the City of St. Louis, located in the basement of the Baltimore Hotel. In order to obtain fire insurance plaintiff needed automatic fire protection which complied with the requirements of the Missouri Inspection Bureau, an organization not otherwise described or defined in the record. In October 1968, plaintiff entered into a written contract with defendant for the installation of automatic fire protection equipment described as "3–KHD30DC Dry Chemical Systems to protect 3 hoods and 2 ducts." The contract provided that "The installation will meet current requirements of the Underwriter's Laboratories, National Fire Protection Association, State Inspection Bureau, and local Fire Department."

The physical layout of the kitchen is somewhat indefinite in the record and is difficult to describe. In its brief, respondent refers to "the drawings attached to the installation contract." The contract has been filed with this court as Exhibit No. 1, but there are no drawings attached to it. During the testimony of Mr. Frederick Baggerman, plaintiff's expert witness, he drew a sketch on a blackboard, and he then testified while referring to what he had drawn. The sketch is not before this court, and a portion of the testimony of this witness is practically meaningless to one reviewing the record on appeal.

Located in the southwest corner of the kitchen area was a large bake oven, approximately 8 feet by 8 feet, extending to or almost to the ceiling. To the north of that oven was a refrigerator, then a sink, steam tables, a deep fat fryer, a grill, a range top, steam kettles, and another oven known as the confection oven. Over the "cooking area," which apparently extended from the deep fat fryer to the confection oven, there was a metal hood five or six feet deep and approximately twenty-five feet long. North of this hood was a washing facility for pans, a food preparation area, and an exhaust fan. Above the hood and near the ceiling was a rectangular metal duct, its dimensions not being shown. The hood did not extend southward to the bake oven; the southern end being closed.

A round duct extended from the top of the bake oven to the rectangular duct, apparently entering from the side. About twenty feet east of the bake oven was a breakfast kitchen area over which there was a hood. A round duct extended from that hood northwesterly to the duct from the bake oven, those two joining before entering the rectangular duct over the large hood.

Defendant installed in the rectangular duct and north of the hood what was called a fusible link. There were five openings in the rectangular duct into the large hood, and the fusible link was located twenty-six (or twenty-eight) feet north of the most southerly opening. Four nozzles were installed in the openings of the rectangular duct through which a powder substance was ejected if and when the temperature in the duct reached the melting point of the fusible link and activated the mechanism.

We cannot determine from the record precisely where the four nozzles were located, but there was no nozzle in the rectangular duct south of the third opening from the south end of that duct. Also, although the contract called for protection to three hoods, we can find reference in the record to only two; the large hood over the "cooking area" and the one over the "breakfast kitchen area." Neither can we determine the "2 ducts" to which the contract referred. In addition to the rectangular duct there were two round ones; the one from the bake oven to the rectangular duct, and the one from the kitchen hood to the other round duct just before it entered the rectangular duct. Also, while the contract refers to "3 * * * chemical systems," we find nothing to indicate of what a "system" consists. The record does not affirmatively disclose whether there were or were not nozzles for the discharge of chemicals located in the hood over the breakfast kitchen area, the top of the bake oven, or in the round ducts. It might be inferred that the

only nozzles that were installed were those in the rectangular duct, but there is no evidence as to the area that would be sprayed by the chemicals in the event the fusible link was activated.

Early in the morning of January 12, 1971, an employee turned on the large oven, and immediately thereafter a fire occurred in the top or upper portion of the oven, apparently resulting from an accumulation of grease. There is nothing in the record to indicate whether the exhaust fan was turned on or off, but at some stage of the fire the fusible link in the rectangular duct apparently was activated because there was a residue of white substance on the equipment. Substantial damage resulted from the fire.

■ At the close of the evidence the trial court directed a verdict for defendant. Plaintiff contends on this appeal that the trial court erred in doing so because the evidence authorized a finding that the "defendant expressly contracted and warranted that it was installing a fire protection system that would do the job for which it was purchased, to wit: 'protect' the ducts in plaintiff's kitchen." It argues that there was a breach of the warranty because "there was a duct running a distance of about 12 feet from the bake oven north to the [large] hood * * * that had absolutely no protection." Plaintiff then argues that if the contract did not create an express warranty, the law "implies a warranty that a chemical fire protection system installed to protect the ducts in plaintiff's kitchen would be reasonably suited to do the job." We note that the asserted implied warranty is the same as the claimed express warranty. For this reason we need not consider separately whether there was an implied warranty because "an express warranty excludes an implied warranty of fitness * * * if the express warranty relates to the same or similar subject matter as one which would have been implied." Mitchell v. Rudasill, 332 S.W.2d 91, 95 (Mo. App.1960).

The contract was dated October 3, 1968, and the fire occurred on January 12, 1971.

Although the Uniform Commercial Code, §§ 400.1–400.10 RSMo 1969, was enacted in 1963, and it contains specific provisions concerning the creation and effect of express warranties, § 400.2–313, and implied warranties, § 400.2–314, no mention of that Code is made by either party in its brief.

It is provided in the Uniform Commercial Code that an express warranty may be created by (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain; (b) any description of the goods which is made a part of the bargain; and (c) any sample or model which is made part of the basis of the bargain. In this case the defendant entered into a contract to install on the plaintiff's premises "3–KHD30DC Dry Chemical Systems to protect 3 hoods and 2 ducts," and as "part of the basis of the bargain," it made an "affirmation of fact or promise" that the equipment, when installed, would meet all current requirements of the three named groups or associations and the local fire department. This created an express warranty that "the goods [the dry chemical fire protection systems] [would] conform to the affirmation or promise." If they did, then defendant complied with his contract and thereby afforded the "protection" to the "3 hoods and 2 ducts" that it contractually agreed to provide. But, there is no evidence whatever in the record as to what the "current requirements" were, and more important, there is no evidence whatever that the equipment as installed failed in any respect to meet those requirements. There was a total lack of proof that defendant breached this express warranty.

Plaintiff argues that the express warranty was that the system (or systems) was to " 'protect' the ducts in plaintiff's kitchen." First, the reference in the contract was to "2 ducts," not to the "ducts in plaintiff's kitchen," and our review of the evidence indicates that there were at least three ducts. If the round duct leading from the bake oven and the rectangular duct are to be considered as one duct, there is no evi-

dence that this was the intention of the parties, or that they should be so considered by reason of the custom and usage in the trade.

Next, we cannot determine from the evidence what was intended to be meant by "protect." We are certain that it did not mean that the "system would prevent" fires in the hoods and ducts as plaintiff alleged in its petition. From all that can be gathered from the evidence, and to us this seems to be the most reasonable meaning, the term was intended to mean that the system was to provide the protection that would result from an installation that met the requirements of the named groups and associations and the local fire department. If the term was intended to have a different meaning it would be by reason of the usage of that term in the specialized field of providing fire protection equipment, but there is no evidence as to that. We find no basis for a cause of action based on warranty.

Plaintiff's final contention is that defendant was "guilty of negligence in installing a dry chemical fire protection system which would only protect a portion of the main duct in plaintiff's kitchen, when defendant had a duty to protect all the ducts under the provisions of the written agreement between the parties."

If defendant had the asserted duty by reason of the contract provisions, and it did not comply with that duty, its failure to do so created a cause of action for breach of contract, not for negligence. The parties contracted that a system (or systems) would be installed that met the requirements of the three named groups or associations and of the local fire department. If those requirements were met, and there is no evidence in the record that they were not, then defendant could not be guilty of negligence in not doing more than the contract obligated it to do. We find no basis for a cause of action based on negligence.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.