[Civ. No. 16685. First Dist., Div. One. June 26, 1956.]

CLARENCE G. EDMONDS, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

520

Hildebrand, Bills & McLeod and D. W. Brobst for Appellant.

A. B. Dunne, R. Mitchell, S. Boyd and Dunne, Dunne & Phelps for Respondent.

WOOD (Fred B.), J.—Plaintiff, a railroad switchman, was injured while working as a skateman in defendant's retarder yard at Roseville.* He was braking a gondola car loaded

---

*The retarder yard is used for the classification of cars. Incoming trains are broken up and cars are then spotted along separate tracks, grouped according to their destination. Tracks extend in an east-west direction. The west end of the yard is higher than the east end. The cars are brought in at the highest point and then started downhill easterly. An employee in a control tower controls their destination in the retarder yard. After the cars start downhill they pass through three sets of mechanical devices, called retarders, that slow the movement of the cars.

The retarders are controlled by a man in the tower. The tracks beyond the retarders are graded so that the cars, after they pass the last retarder, will keep moving without gaining or losing speed. The man in the tower has no control over the speed of the cars after they pass the last retarder. The speed of the cars as they come through the retarders depends upon the weather, their weight, and whether or not they have been standing or rolling before entering the retarder yard.

A skateman is a switchman assigned to the retarder yard to secure the cars on the tracks to which they have been directed by the man in the tower. He places metal wedges, called skates, in front of the car at the end of each track. He sets the brakes on cars and climbs aboard each moving car to slow it down before it couples with the car ahead of it.

with poles. He brought this action for damages (1) under the Federal Employers' Liability Act (45 U.S.C.A. § 51), alleging (a) that defendant so negligently maintained the track with an unusually steep grade and so carelessly controlled the car that the car moved at an unusually high rate of speed and (b) that defendant so negligently maintained, inspected and serviced the poles (in the car on which plaintiff was injured) that they were not properly secured; and (2) under the Federal Safety Appliance Act (45 U.S.C.A. § 11), alleging that the handbrake on the car was inefficient in that when plaintiff attempted to slow the movement of the car by means of operating the brake in the regular manner, the brake failed to operate in sufficient time to prevent a violent collision.

Verdict and judgment were given for the defendant. In support of his appeal plaintiff claims (1) the evidence is insufficient, that it shows liability as a matter of law, and (2) prejudicial error occurred in the giving of certain instructions to the jury.

### The Sufficiency of the Evidence

Plaintiff boarded a gondola car after it had passed the last retarder and had some 450 to 500 feet to go before coupling with the car ahead of it. He took his position on a platform on the outside of the lead end and began winding the handbrake to slow the car's movement. Instead of grasping a grabiron on the outside of the car he placed his left hand over the edge and extending downward inside between the car's end and the load the car was carrying. The car's speed, 8 to 12 miles an hour, did not materially slacken. At the moment of coupling the load (creosoted poles laid lengthwise) shifted and pinned plaintiff's left hand against the car end, causing the injury.

*As to the element of speed,* there is evidence that 8 to 12 miles per hour is not unusual for a car after passing the last retarder. Plaintiff himself so testified; also that he had previously applied brakes to cars at that end of the yard at that speed. He invokes a rule of the defendant which specifies 4 miles per hour as a safe coupling speed. That by its terms does not necessarily apply to the speed of a car as it passes the last retarder. Also, it was designed for the protection of the cargo (including the most fragile type) and there was testimony that coupling at 8 miles per hour would not be unsafe for the cargo here involved. ▇ Furthermore, even if there were a violation of an applicable rule of the defendant

that of itself would not compel a finding of negligence. (*Davis* v. *Johnson,* 128 Cal.App.2d 466, 472 [275 P.2d 563].)

█ *As to the loading,* there is evidence that the car was properly loaded; certainly no basis for a reviewing court to hold as a matter of law that the car was negligently loaded and that such negligence was a proximate cause of the injury.

*As to the handbrake,* if inefficient, it would be a violation of the Federal Safety Appliance Act and a basis of liability with or without negligence upon the part of the defendant. That the brake was not efficient is demonstrated, plaintiff says, by the fact that he properly applied the brake and it did not work. But there is evidence that he did not properly apply it; i. e., he did not completely wind up the brake chain, which is necessary for the brake to take hold. Also, in a written report made shortly after the accident, plaintiff wrote, "Brake was not defective." There is testimony, too, that an inspection made of this brake 25 minutes after the accident showed that it was in good order. Even if the brake had not functioned efficiently, there would still be the question of proximate cause for the jury to decide.

Finally, we observe that *the evidence furnishes a basis for an implied finding that plaintiff was negligent* in placing his left hand on the inside of the car, instead of grasping the grab-iron which was placed for his use upon the outside of the car, *and that such negligence was the sole cause of his injury.*

One of defendant's "Safety Rules Governing Employees and Train Engine and Yard Service," provided as follows: "Never stand or place any part of your body between end of car and loads of lumber or other lading which might shift. Never ride any part of an open topped car equipped with sides, loaded with pipe or any other lading which might shift, with any part of the body inside the car or in any position where shifting of lading might cause injury." Plaintiff admitted he had received a copy of the safety rules and probably had read this one "because I answered it in my questionnaire," an examination he had taken to test his knowledge of the rules. He knew the grab-iron was there; said it was good to use in climbing up onto a car but that he did not use it when braking a car. One of plaintiff's witnesses testified that in coupling a car like this there is no custom or practice to keep one's hand down inside while the cars come together; that he would take his hand off there before making the coupling. Another of his witnesses testified

524

it is the practice in this yard, when riding a gondola car loaded with logs or poles, to keep one's hands out of the end of the car; that the safety rules require one to take the safe course, which is to keep one's hands out. A third witness, called by the defendant, also testified it is the custom and practice in this yard to use the grab-iron, not to place a hand on the inside of the car.

In this state of the record a reviewing court cannot say as a matter of law that the verdict was not supported by substantial evidence.

## The Instructions

Plaintiff criticizes Instruction Number 23 for saying ". . . if the plaintiff was an experienced workman," contending it assumed that plaintiff was such a workman. We do not so interpret that instruction. He similarly criticizes similar "if" clauses of Instructions 25, 27 and 29. We find in those clauses, in the context in which they severally appear, no invasion of the fact-finding function of the jury.

He says the court injected the defense of assumption of risk in portions of Instructions 16 and 27. These were to the effect that the defendant is not an insurer; is not liable simply because there may be some danger in connection with its normal and customary railroad operations; and that injury in the course of such operations does not, in the absence of negligence upon the part of the defendant, impose liability upon the latter under the Federal Liability Act. These closely resemble the instructions on this subject which were approved in *Crowder* v. *Atchison, T. & S. F. Ry. Co.*, 117 Cal.App.2d 568, 574-575 [256 P.2d 85]. They differ significantly from the instructions disapproved in *Perrett* v. *Southern Pac. Co.*, 73 Cal.App.2d 30, 34-38 [165 P.2d 751].

Plaintiff claims that the first two sentences of Instruction Number 33* assumed plaintiff was negligent. We do not so read them. He questions the last sentence for its failure to tell the jury that a finding that plaintiff was negligent must be based upon a preponderance of the evidence, but the court adequately informed the jury on that subject by

---

*Number 33 reads as follows: "You have been instructed with respect to negligence on the part of the plaintiff Edmonds. It does not mean that negligence on the part of the plaintiff Edmonds can never be a complete defense in an action of this sort. In some circumstances it can be. If you find that the plaintiff Edmonds was guilty of negligence and if that negligence was the sole proximate cause of his injury, his negligence is a complete answer to this action and it will be your duty to return your verdict in favor of defendant Southern Pacific Company."

other instructions. ■ He says, too, that the words, "if any" should have been inserted after "negligence" where the latter the second time occurs in the last sentence of Number 33. We perceive no error in that. ■ He questions the use of the word "proximate" in the expression "sole proximate cause," as suggesting "immediate" as opposed to "remote" and thus confusing the jury particularly in determining liability under the Federal Safety Appliance Act. But this instruction was immediately followed by an appropriate and adequate instruction on "proximate cause," which among other things told the jury it is a cause which "sets in operation the factors that accomplished the injury" and "may operate directly or through intermediate agencies." In *Carter* v. *Atlanta & St. Andrews Bay Ry. Co.*, 338 U. S. 430, 435 [70 S.Ct. 226, 94 L.Ed. 236], the court said: "With proper explanations, the court could have advised the jury that if petitioner's own negligence was the *sole* proximate cause of his injury, the verdict must be for respondent . . ."

■ Plaintiff criticizes Instruction Number 13 in certain respects. It was an instruction on negligence. In the middle of it, this statement appears: "Moreover, it is not necessary that an intention to injure or violate the law or do the act or acts which cause an injury be proven; intent is not an essential element of negligence. It is sufficient if the defendant did a negligent act from which plaintiff suffered an immediate injury. It is not necessary for plaintiff, in proving his cause of action for negligence to prove that the defendant did anything wilfully or wantonly. The gravamen of the complaint is negligence and negligence only." Plaintiff says that by using the word "immediate" the court precluded the jury from considering negligent conduct if it happened to be the first act or an intermediate act instead of the last act in a chain of causation, and that the use of the word "complaint" in the last sentence above quoted told the jury that negligence was the gravamen of plaintiff's complaint under the Federal Safety Appliance Act as well as under the Federal Employers' Liability Act. This criticism, taking these words out of the context of the instructions as a whole, has seeming merit but when we consider the instructions given on the subject of proximate cause and on the issues under the Safety Appliance Act, we do not believe the jury was misled.

■ Plaintiff makes a similar criticism of Instruction Number 16, which starts with the words: "The gist and gravamen of plaintiff's action is fault: (1) negligence under the Federal

Employers' Liability Act, and (2) failure to equip a car with efficient brakes as provided for in the Federal Safety Appliance Act. The plaintiff must prove by a preponderance of evidence fault on the part of the defendant and that such fault was a proximate cause of the injury . . ." He objects to the use of the word "fault," claiming it denotes negligence. In this he overlooks the use of the word "negligence" in relation to the Employers' Liability Act and its absence when the Safety Appliance Act is mentioned, and ignores a series of appropriate and adequate instructions dealing specially with the issues under the Employers' Liability Act and another series of instructions dealing specially with the issues under the Safety Appliance Act. The latter included the following statement: "The duty imposed upon the carrier by the Safety Appliance Act to equip its cars with efficient hand brakes and appliances provided for in the Act is an unqualified, continuous, absolute, and mandatory duty to maintain such brakes in an efficient condition, and regardless of the question of reasonable care on the part of the railroad company or its employees. The test of the observance of the duty imposed by the Safety Appliance Act is the performance of the appliance. A failure of the appliance to work efficiently when properly operated will sustain a charge that the act has been violated, and render the carrier liable for an injury which results from such failure. The question of negligence in the sense of want of care is not an issue under the Safety Appliance Act. Where an injury results from the inefficient operation of an appliance, whether or not such inefficiency was due to the negligence of the carrier or contributory negligence on the part of plaintiff is wholly immaterial. Therefore, if you find that it was a violation of the Federal Safety Appliance Act—efficient brake question—which contributed proximately to cause the accident here in question and the injuries resulting therefrom, you will have no occasion to consider contributory negligence on the part of plaintiff as that is no defense to a violation of the Federal Safety Appliance Act."

Viewed as a whole, the instructions were correct. We find no basis for assuming that the jury otherwise viewed them, particularly in the light of the care the trial court took in segregating and explaining the issues and its admonition to the jurymen that they were not "to single out any one sentence or any one instruction, and ignore the others, but you are to consider the instructions all together and as a

whole, and harmonize them so far as you are able to do so" and that "[t]he order in which the instructions are given has no significance as to their relative importance."

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 21, 1956. Carter, J., was on the opinion that the petition should be granted.