Howard NELSON (Plaintiff) Respondent,

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a corporation (Defendant) Appellant.

No. 30914.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Motion to Quash and Set Aside Opinion, for Rehearing or to Transfer to Supreme Court Denied Oct. 15, 1962.

Donald W. Bird, St. Louis, for appellant.

David G. Dempsey, Clayton, Walter L. Floyd, Jr., Robert D. Bransford, Arthur E. McLeod, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action by Howard Nelson, as plaintiff, against defendant St. Louis Public Service Company to recover damages for personal injuries alleged to have been sustained by him on December 15, 1959, when he was struck by one of defendant's buses while riding a motor scooter. The trial below resulted in a verdict and judgment for plaintiff in the sum of $12,500.00. From this judgment defendant has appealed.

The accident happened within the intersection of Michigan and Schirmer Avenues in the City of St. Louis. Michigan Avenue runs north and south, and Schirmer runs east and west. Michigan Avenue south of Schirmer is 35 feet 9 inches wide, and Schirmer is 30 feet wide. There are stop signs on Schirmer for east and west traffic, but none for north and south traffic on Michigan. The stop sign for westbound traffic on Schirmer is 15 feet east of the east curb of Michigan. The block south of the intersection measures 320 feet along Michigan from the south curbline of Schirmer to the north curbline of the next intersecting street. There is a bus zone on the east side of Michigan south of Schirmer and a bus stop sign located 85 feet south of the south

curbline of Schirmer. The accident happened shortly after 5:00 P.M. It was dark at the time. At the time of and just prior to the accident the defendant's bus was proceeding north on Michigan Avenue, and plaintiff was riding his motor scooter west on Schirmer. Susan Boehm, an eleven-year-old girl, was riding with plaintiff at the time. She was seated behind plaintiff on the motor scooter.

Plaintiff testified that on the occasion in question he brought his motor scooter to a stop at the stop sign 15 feet east of the east curb of Michigan. The handlebars of the scooter were approximately even with the stop sign. He looked to his left but saw no northbound traffic on Michigan. He then moved forward about six feet and again stopped with the front end of the scooter about five or six feet east of the east curbline of Michigan. He did this in order to better see past a building. At the time the right side of the scooter was two feet south of the north curb of Schirmer. He came to a complete stop and placed both feet on the ground. Both the headlight and taillight on the motor scooter were burning at the time. Plaintiff did not know the location of the bowling alley to which he and his friend were going, and, after the second stop, asked his companion which way to go. That was the last thing plaintiff remembered until he awakened in the hospital.

Susan Boehm, the passenger on the motor scooter, testified on plaintiff's behalf. On direct examination she testified that she was seated behind plaintiff; that the headlight on the scooter was burning, and that plaintiff stopped the scooter at the stop sign for westbound traffic, which was located, according to other evidence, fifteen feet east of the east curbline of Michigan. Miss Boehm further testified she then looked both ways for approaching traffic, and that plaintiff also at the time turned his head to the left and to the right. She also stated that when she looked to the left she saw a bus coming north on Michigan Avenue. It was then about a half block south of the intersection. She did not know if the headlights on the bus were on at the time, but stated it was then light enough for her to see the bus without headlights. She testified plaintiff then started the motor scooter forward very slowly, and she looked ahead in the direction they were going. The motor scooter was operated straight across the intersection, neither turning to the right nor left. When she next saw the bus the motor scooter was more than half way into the intersection and the bus nine feet from the motor scooter. She did not mention to plaintiff seeing the bus either at the time she first observed it or when she saw it nine feet away. At the time she saw the bus nine feet away, plaintiff tried to go faster, but the front part of the bus hit the motor scooter. Miss Boehm has no recollection of subsequent events which took place at the scene of the accident. She was knocked unconscious and regained consciousness thereafter while in an ambulance being conveyed to the hospital.

On cross-examination Susan Boehm testified she looked south for about three seconds, when the motor scooter was stopped with its front end even with the stop sign. She then glanced toward the north for about one second, then looked straight ahead, and the motor scooter started forward. She stated that she thought the bus stop on Michigan south of Schirmer was about a half block up the street, and, that the bus, when she first saw it, was about in the area of the bus stop sign. She further stated that it looked as if the bus was slowing down to pull into the bus stop at the curb, but did not actually do so.

On redirect examination the witness testified that when plaintiff started forward from the stop sign, she was looking south; that she had looked to the right before the motor scooter started up and then looked to the left; that when the motor scooter started up the front end of the bus was a little south of the bus stop sign and that the next time she saw the bus it was about nine feet from the scooter and half way into the intersection. On recross-examination the witness stated that she saw the bus

twice; the first time she saw it the motor scooter was at a stop, and that the bus was "a little back" of the bus stop sign. She said she watched the bus for three seconds. She then looked to the north, then straight ahead, at which time the motor scooter was moving.

Police Officer Edward Moore came to the scene of the accident shortly after it happened. He testified that the bus was stopped north of the intersection with its rear end twenty-five feet north of the north curbline of Schirmer, and its left side three to five feet east of the center line of Michigan. The scooter was at the northwest corner of the intersection in the crosswalk, approximately three and one-half feet from the west curbline of Michigan. He said there were no lights on the motor scooter when he arrived and that he found the headlight and taillight inoperative. Russell Akerson, who was first to arrive at the scene of the accident, testified that the headlight on the motor scooter was on when he left his store, a short distance away, when he heard the crash, and was on when he arrived at the scene of the collision.

The operator of the bus, Alphonse Dickneite, testified on behalf of defendant. He stated it was dark at the time of the accident and the inside lights and headlights of the bus were on at the time. As he approached the intersection the bus was traveling twenty miles per hour until it reached a point thirty feet south of Schirmer, at which time he reduced its speed to twelve or fifteen miles per hour. On direct examination he testified that he looked to the right when his bus was sixty feet from Schirmer, also when it was thirty feet south of the intersection, and again when it was fifteen feet from the south curbline of Schirmer. He stated that he did not see the motor scooter as he approached the intersection.

On cross-examination he stated that when he was sixty feet south of the intersection he was looking straight ahead, and the first time when he looked to his right

the bus was thirty feet from Schirmer. At that time he did not see the motor scooter. On direct examination he testified that when he reached the south curbline of Schirmer he looked to his right and saw the motor scooter fifteen feet east of the east curbline of Michigan, traveling about twenty miles per hour, about two feet south of the center line of Schirmer. The bus was, at that time, according to his testimony, traveling at the rate of seven to ten miles per hour and was about two feet from the center line of Michigan. At that time he had his foot on the accelerator to go on across the intersection. He stated, when he saw the motor scooter, "I immediately went for my brakes. * * * to try and * * * stop as fast as I could", but the brakes did not take hold before the impact. He further stated that the speed of the motor scooter was not reduced from the time he first saw it until the collision. The left side of the motor scooter came in contact with the left front of the bus. The motor scooter was knocked clear of the bus and the people on the scooter were knocked onto the curb. Since everything was knocked out of his way he let the bus roll until it was off of Schirmer. At first he said the bus stopped within twenty-five feet, but later stated it was twenty feet.

On cross-examination Dickneite stated that when the bus was fifteen feet from the intersection he guessed he could see east on Schirmer, a distance of about twenty to twenty-five feet. He said the speed of his bus at that time was around twelve miles per hour. At first he said he could see almost a whole block east when the bus was at the curbline, but changed this to twenty to twenty-five feet after being confronted with his testimony given by deposition in which he stated he could see only twenty feet. He then stated it could be possible to see the whole block "Provided you turned your head all the way around." He testified that the motor scooter was twenty-three feet away from where he was sitting on the bus when he first saw it, but admitted he probably told the police that he did

not see it until it was right on top of him, by which he meant it was close. He denied, at first, that the bus had deviated from a straight line as it approached Schirmer, but when a portion of his prior deposition was read to him, in which he stated he didn't know the fact one way or the other, he said he did not think he went over to the right, but was not certain.

The facts concerning plaintiff's injuries are not set forth herein for the reason that there is no issue on this appeal as to the nature, character, or extent of such injuries, nor is there any contention that the verdict is excessive.

Appellant's first point is that the court erred in failing and refusing to direct a verdict for the defendant for the reason that plaintiff failed to introduce substantial evidence that defendant had the means at hand and the ability to avoid the collision had a vigilant watch and lookout been kept. In support of this assignment it is urged that plaintiff failed to establish the exact point where the bus operator became chargeable with knowledge that plaintiff was entering the intersection, and evidence of his ability thereafter to have avoided the accident. Defendant's argument is based on the theory that the testimony of plaintiff's witness, Susan Boehm, which bore on this issue, was so contradictory that it was of no probative value.

The alleged contradictory testimony was with reference to the direction in which Susan was looking when the motor scooter started up from its stopped position at the stop sign, fifteen feet east of the east curbline of Michigan. She testified on direct examination that plaintiff stopped the motor scooter at the stop sign, and that she looked both ways; that when she looked to her left she saw the bus about a half block south of the intersection; that the motor scooter then started and she looked forward in the direction it was going. The next time she saw the bus it was nine feet from the motor scooter.

On cross-examination Miss Boehm testified that as the motor scooter approached Michigan, and before it came to a stop, she was looking toward the south and that she had been looking toward the south for about three seconds. After the motor scooter came to a stop she quit looking toward the south. When the motor scooter came to a stop, she saw the bus about in the area of the bus stop sign, which was approximately the half way point in the block. After seeing the bus she glanced toward the north for about a second, and the motor scooter then proceeded forward. On redirect examination she stated that when she first saw the bus it was, "a little back", south of the bus stop sign, and that she was looking south when the motor scooter started from the stop sign. On recross-examination she testified she saw the bus twice, the first time when the scooter was at the stop sign, and the second time when it was nine feet from the motor scooter. When she first saw the bus it was "a little back" from the bus stop sign; that she looked to the left approximately three seconds, then looked toward the north when the scooter was at a stop. After looking toward the north she looked straight ahead, at which time the motor scooter was moving. Thereafter, in answer to plaintiff's counsel, she stated that when the motor scooter started forward she was looking straight ahead.

It is true there was some variation in Susan's testimony with regard to the sequence of her looking to the left, right, and straight ahead, but we cannot say that her testimony in reference thereto had no probative value. Rather it was for the jury to determine what were the facts testified to and determine therefrom the interval of time between her first observation of the bus and the forward movement of the motor scooter into a position of apparent danger. After a determination of this fact the jury could, with a reasonable degree of certainty, have ascertained the position of the bus at the time the operator of the bus became chargeable with knowledge of plaintiff's danger.

Under the evidence most favorable to plaintiff, the bus was one-half block, or one hundred sixty feet, south of the intersection at the time Susan first saw it. It was traveling twenty miles per hour at the time according to defendant's evidence. Susan testified that during the three seconds she looked to the left the bus reduced its speed. Schirmer Avenue is thirty feet wide so that the bus was, at the time Susan first saw it, one hundred eighty-eight feet from the point of impact, since the motor scooter, according to plaintiff's testimony, was traveling two feet south of the north curbline of Schirmer Avenue. If the motor scooter started forward three seconds after Susan first saw it, the bus, at the time, would have been seventy feet south of the intersection and ninety eight feet from the point of impact. If four seconds elapsed between the time Susan first saw the bus and the starting of the motor scooter, the bus would have been forty feet south of the intersection and sixty eight feet from the point of impact. The operator of the bus testified he did not see the motor scooter until the bus reached the intersection. Clearly there was substantial evidence of the failure of the operator to keep a proper lookout, and evidence that had he done so he could have, by the exercise of the highest degree of care, avoided the collision. Since it was the left side of the bus that struck the motor scooter the jury could have found that the accident could have been avoided by slackening the speed of the bus. Also under the evidence the jury could reasonably have found that the collision could have been avoided by swerving, or by sounding a warning.

Appellant next complains of Instruction No. 1, given by the court at the request of plaintiff. It was a verdict-directing instruction submitting the pleaded assignment of negligence that defendant failed to keep and maintain a proper lookout. The first paragraph of the Instruction is an abstract statement of law, and the second paragraph hypothesizes the facts to be found by the jury before returning a verdict for plaintiff. No complaint is made with reference to the latter, therefore we need only set out the first paragraph. It reads as follows:

"The Court instructs the jury that under the law of this State the defendant, St. Louis Public Service Company, by and through its driver and agent, owed the duty to exercise the highest degree of care to keep and maintain a constant, careful and vigilant watch and lookout ahead and laterally ahead while operating its bus so as to see, discover, be cognizant of and continually alert to the presence, position and movement of other vehicles at or near the intersection of Schirmer Street and Michigan Avenue and any failure on its part to do so would constitute negligence as that term is used in these instructions."

It is urged that the Instruction is so phrased as to place an absolute duty on the defendant to have "seen and discovered" the presence of plaintiff's vehicle at the time in question, when all that is required by law is that defendant exercise the highest degree of care in the premises. We do not believe such an interpretation can be placed upon the language of said Instruction. It seems to us to lay down the proper rule, i. e., that defendant was under a duty to use the highest degree of care to see and discover the presence of other vehicles, and does not place an absolute duty upon defendant so to do.

Defendant also complains of the use of the phrase, "and any failure on its part to so do would constitute negligence." It is contended that the language in question plainly permits of no failure and, in so doing, places an absolute burden on defendant and makes him an insuror of plaintiff's safety. There is no merit to the point urged. The criticized phrase clearly refers back to the preceding statement of the duty on the part of defendant to keep a lookout. That duty was specifically stated as a duty to exercise the highest degree of care to keep and maintain a lookout.

■ Finally it is urged that the rule of law announced was erroneous because it "ignored the necessary element" that in a lookout case the defendant must have the ability to avoid a collision after being chargeable with seeing plaintiff. We need not notice this point for the reason that no such objection was made either at the trial or in defendant's motion for new trial. See Civil Rule 70.02, V.A.M.R. In passing we may say, however, that this matter was submitted in the second paragraph of the Instruction.

■ The final point urged is that the court erred in failing to sustain defendant's motion for a directed verdict for the reason that plaintiff was guilty of contributory negligence as a matter of law in the following particulars, i. e., (A) failure to keep a lookout, (B) failure to yield the right-of-way.

Plaintiff testified that when he stopped at the stop sign he looked to his left but saw no approaching traffic. Susan Boehm testified she observed plaintiff look both ways at the time. She also testified that when she looked to her left she observed the bus a half block to the south, which would place it one hundred sixty feet south of the intersection. After stopping at the stop sign plaintiff moved forward about six feet so that he could better see past a building that was on the southeast corner of the intersection. In other words, plaintiff's intention in making this movement was to look for approaching traffic. However, he was unable to say whether he did or did not again look to his left, because of loss of memory due to the accident. But it could reasonably be inferred from his actions and intentions that he did look at this point and it could also be inferred from the other testimony that the bus was then a considerable distance south of the intersection and, according to Susan Boehm's testimony, looked as if it was slowing down and moving toward the curb. In fact, the operator of the bus testified he reduced the speed of the bus as he approached the intersection.

Under the facts it cannot be said, as a matter of law, that plaintiff was guilty of contributory negligence as claimed. In our judgment the issue was one for the jury.

We find no error in the record. The judgment is affirmed.

WOLFE, J., and ELGIN T. FULLER, Special Judge, concur.