August MILLER, Appellant,

v.

GULF, MOBILE & OHIO RAILROAD COM-
PANY, a corporation, Respondent.

No. 50310.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1964.

Motion for Rehearing or to Transfer to Court
En Banc Denied Jan. 11, 1965.

Joseph Cohen, Charles S. Schnider, John E. Shamberg, Joseph P. Jenkins, Kansas City, Kan., James P. Jouras, Kansas City, Mo., for appellant.

William H. Curtis, George M. Wells, Morrison, Hecker, Cozad & Morrison, Kansas City, Mo., for respondent.

EAGER, Judge.

This suit was instituted to recover $200,-000 for personal injuries allegedly suffered in a fall on one of defendant's locomotives. The petition charged violations of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the Federal Safety Appliance & Boiler Inspection Act, 45 U.S.C.A. § 1 et seq. Subsequently plaintiff has also claimed a violation of certain rules of the Interstate Commerce Commission. The specific violations charged will be mentioned later. During the trial plaintiff abandoned his reliance upon the Federal Employers' Liability Act. There was a verdict for defendant and plaintiff has appealed, after the overruling of his motion for a new trial.

There was no controversy regarding the interstate character of plaintiff's work. He was a fireman on defendant's diesel switch engine No. 20, operating in its 12th Street yards in Kansas City, Missouri. He had worked for defendant as a fireman and hostler for approximately two years from 1945 to 1947, but was then furloughed. He re-entered the service in 1953 and continued, except for a period of illness, until the time of his alleged injury on April 11, 1957. He was then 51 years old, a very large man, five feet ten inches in height, but weighing approximately 300 pounds. He had previously engaged in heavy construction work of various kinds. In defendant's service he had frequently worked as a fireman on this particular engine. At the front of the cab of the engine on the left side there was a folding door, about 20 inches wide, which led to a gangway or catwalk running along the left side of the engine proper. Outside this door, there was a handhold on the right near the top of the door and a railing on the left which ran along the entire side of the catwalk. Below the doorway there was one step leading down to the catwalk. This was a metal step, roughened or corrugated in its construction, 16¼ (or 16¾) inches long, and 8 inches wide; at the outer edge a lip projected downward 1½ inches. This step was firmly riveted to a

back plate constituting a part of the metal wall. In some of the photographs a portion of the edge of the step looks somewhat more "shiny" than elsewhere, but from the variation in these exhib'ts it is impossible for us to tell whether this is the result of wear or of the lighting. Plaintiff's testimony will be noted later.

Plaintiff came on duty at 3:30 p. m.; it was shown both from oral testimony and from weather reports that it had snowed some (the total depth undetermined) from 3:25 p. m. to 8:25 p. m. on that day. The official weather bureau noted "heavy snow" at 5:25, and at that time the temperature was 29 degrees. At various times the snow was classed as "light." Some snow had accumulated on the ground, but it "didn't stay long." Plaintiff testified that at the time of his fall the step was wet and "slick," but that there was no snow or ice on it; specifically, he described the step as "wet and wore." There was testimony from another employee who went on and off the engine that evening that he had not found the step slippery when he used it.

At about 8:00 or 8:15 p. m. the switch engine stopped at the switch shanty for a lunch period. Plaintiff opened the door already described, shoved it back with his left hand, took hold of the door with his right hand, turned "a little sideways" to get his bulk through the door, and placed his left foot on the step, more or less "lengthwise" of the step; then, in order to bring down his right foot, he moved his left foot and it slipped off of the step, causing him to fall. He claims severe injuries to his left knee from this fall. On cross-examination he stated that he placed his left foot "right close to the edge," that "I never looked down, and we aint got no lights to see"; that, although he did not look, he did it by feel; that he was attempting to slide his left foot backwards, but he could not say whether he moved it closer to the edge or not; also, that he could not say whether he had ever previously noticed that the step was slippery. He further testified: that as he slipped he reached un-

successfully for the grab iron, and when he fell he heard his knee "pop"; that he managed to get off the engine, eat his lunch and finish his shift, although his knee was swollen and painful. On the next day he reported to physicians of the Missouri Pacific Hospital Association and a long series of treatments, observations and operations began. It was his contention that at the time of trial, nearly six years later, he was totally and permanently disabled, and there was substantial evidence of this.

There was evidence for defendant that two days after the fall plaintiff had stated to his general foreman that he had "slipped on the snow getting off the engine"; the history given by him to the Missouri Pacific Hospital Association included a statement that "I was getting off the engine. There was snow on the steps, which caused me to slip and wrench my left knee." The history given at a Chicago hospital was: "April 11, 1957, slipped on railroad engine in snow." In a signed statement given by plaintiff to defendant's claim agent he stated that "due to this snow collecting on the step I slipped and fell * * *," and later he again made substantially the same statement in writing. Plaintiff had stated to defendant's shop supervisor two or three weeks after his fall, according to that witness, that he was getting off the *back* of the engine (where there was also a ladder) and that his foot had "slipped on the ice and snow on the ground." There was also evidence that upon regular inspections of the entire engine no defects were found and reported.

The specific charges of negligence were in substance: the maintaining of a worn, slick and slippery metal step, and the failure to discover and correct it; the use of an unsafe locomotive; the failure to warn plaintiff and the failure to provide adequate lighting; also (apparently directed at the FELA phase) that defendant had failed to provide tools and equipment to clean snow and accumulated precipitation from the step.

We relate briefly one phase of the very extensive medical testimony, since it in-

volves a controverted issue. This evidence showed very clearly that plaintiff had a severe and long-standing osteoarthritis in his left knee (and probably in his right knee) when he was examined on the day after the accident, and thereafter. Many X-rays confirmed this. According to at least one of the witnesses, this had been further complicated by gout. In 1956 plaintiff had been attended and treated for pain in his feet and ankles, edema in his ankles and legs, and pain in his knees; he had been put on a diet for reduction of his weight, with little success. He was off work from January until June of that year. Some of the medical witnesses thought that the effect of the fall on plaintiff's left knee was minor and that there was no lasting result from it; that his real difficulty merely came from the long-standing osteoarthritis, complicated by the wear and tear or chronic trauma of bearing such enormous weight on his knees and ankles over a period of years; that the left knee joint was simply worn out and useless; also, that his surgical operations, and finally a complete stabilization of the left knee, were so caused. All of the doctors agreed that plaintiff's weight was a materially adverse factor. Some of the medical witnesses testified that an accident or sprain could or might activate such a condition of arthritis in the knee; some testified that either the metal rod inserted for stabilization of the knee, or the surgical procedure generally, might have had some relationship to a condition of thrombophlebitis for which plaintiff was treated on different occasions and for somewhat lengthy periods in 1961 and 1962; others said not. Based on this controversial medical testimony, along with hospital records, X-rays, etc., there was an issue as to whether or not the alleged fall aggravated the pre-existing conditions to any substantial extent, or whether plaintiff's subsequent and final condition was due to the natural progress of those ailments and diseases.

Plaintiff's three Points in his brief all involve alleged errors in instructions. The first is directed at defendant's Instruction No. 8, which was as follows: "The Court instructs the jury that even if you find and believe that plaintiff slipped and was injured on April 11, 1957, on the step described in Instruction No. 1, nevertheless, if you further find and believe that plaintiff put his left foot down on said step and that he then moved his left foot to make room for placing his right foot on the same step and that his left foot slipped and if you further find and believe that plaintiff did not look at the step as he was putting his left foot on it and moving his left foot, and if you further find and believe that plaintiff's manner of putting his left foot on said step and moving his left foot on said step was negligence, and if you find and believe that such negligence was the sole cause of plaintiff's slipping and injury and that plaintiff's slipping was not due to any improper and unsafe condition of said step, as submitted in other instructions of the Court, then plaintiff is not entitled to recover, and your verdict must be for defendant, Gulf, Mobile & Ohio Railroad Company.

"You are instructed that by the term 'negligence', as used in this instruction, is meant the want of that degree of care that any ordinary prudent person would have exercised under the same or similar circumstances." The complaints are, in substance: that the instruction improperly hypothesized the manner in which plaintiff "manipulated" his feet; that it unduly commented upon facts favorable to defendant and omitted others, such as the position of plaintiff's body, his right foot, his hands and his arms, his shoes, the size and location of the step, and construction of the door and the absence of light; that it erroneously hypothesized that plaintiff did not look at the step, thus inferring as a matter of law that a failure to look was negligence; and, finally, that the negligence of plaintiff was improperly submitted because there was no evidence of such.

Counsel cite several cases as illustrative of the principle that it is error to comment unduly on certain phases of the evidence, ignoring other material parts. Costello v. Kansas City, 280 Mo. 576, 219

S.W. 386; Spalding v. Robertson, 357 Mo. 37, 206 S.W.2d 517; Bittner v. Crown Shoe Mfg. Co., Mo.App., 340 S.W.2d 142; Toburen v. Carter, Mo., 273 S.W.2d 161. There is no doubt about the existence or validity of that principle. The real question is whether a particular instruction has prejudicially violated it. No instruction can or should hypothesize all the evidence. In Costello, an instruction was held properly refused which stated as a fact that plaintiff had said that she looked down when alighting from a streetcar and, based thereon, required a verdict from what she saw or should have seen. The Court criticized the giving of undue prominence to the statement of what plaintiff had *said*. The elements which counsel claim should have been included here are largely details; all of the testimony on this phase of the case came from the plaintiff himself, and thus there was no controversy on the facts. In such a situation it is proper to hypothesize and submit only the ultimate fact issues. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500–501. There was no evidence whatever of the absence or extent of light at the step and nothing to indicate that one could not see the step if he looked, except for plaintiff's remark on cross-examination,—" * * * I never looked down, and we aint got no lights to see." This was hardly sufficient to require the adverse party to hypothesize an inability to see the step, and if plaintiff desired the subject covered he should have offered an amplifying instruction. The jury had heard the uncontroverted evidence concerning all the matters which plaintiff now claims should have been included, and we do not find that any such omissions were prejudicial.

◼ Counsel next suggest that contributory negligence is not a defense under the Safety Appliance and Boiler Inspection Act. That is true. Byler v. Wabash R. Co. (CA 8), 196 F.2d 9; 45 U.S.C.A. § 53. Liability is established upon proof of failure to comply with the act without specific proof of negligence, if the injury is shown to have been caused in whole or in part by a proscribed defect. Amend v. Great Western Ry. Co. (DC Colo.), 158 F.Supp. 499; Byler, supra; McCarthy v. Pennsylvania R. R. Co. (CA 6), 156 F.2d 877. To this extent the provisions of 45 U.S.C.A. § 51 of the FELA are construed in "pari materia" with the Safety Appliance & Boiler Inspection Act. McCarthy, supra. But Instruction No. 8 was not a contributory negligence instruction; rather, it was a sole cause instruction. Under any of the federal acts the defect or failure must *cause* the injury in whole or in part, and an injury caused solely by plaintiff's own negligence is a valid defense. Young v. New York, C. & St. L. Ry. Co., Mo., 291 S.W.2d 64; Robison v. Chicago & E. I. R. Co., 334 Mo. 81, 64 S.W.2d 660 (cert. denied 291 U.S. 682, 54 S.Ct. 558, 78 L.Ed. 1069); Carter v. Atlanta & St. A. B. R. Co., 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236; Edmonds v. Southern Pac. Ry., 142 Cal.App.2d 519, 299 P.2d 8; Mooney v. Denver & R. G. W. R. Co., 123 Utah 224, 257 P.2d 947. In many respects the instruction in Young, supra, was analogous to the one given here. The fact that Young involved an alleged FELA violation is not sufficient to distinguish that case on the question of the propriety of a sole cause instruction. Counsel argue that, even so, a finding of plaintiff's sole cause negligence here would be based upon speculation, particularly since there was no *evidence* of impropriety in his actions, or of a better way to perform the acts. There was some evidence as to how others left the cab, but in any event a jury is permitted to make its own findings on the exercise of ordinary care in matters not involving expert knowledge. In view of plaintiff's own testimony, such a finding as was made here would require no more speculation than have the facts of many other adjudicated cases.

◼ Counsel next argue that the hypothesization of a failure to look constituted "a finding by the Court as a matter of law" that such a failure would constitute negligence, and that an employee is not required "to look at the locomotive or test it

* * *." The Act does not eliminate negligence as a sole cause. It requires no citation of authority to show that anyone, a railroad employee or a casual pedestrian, must ordinarily *look* where he is going if he is in a place where there is a possibility of danger. The federal acts do not guarantee a recovery to a plaintiff if he chooses to step off of a ladder or a step or a tender without giving reasonable attention to what he is doing. The jury here has found that plaintiff was negligent and that there was no defect. The submission of the failure to look was not submitted as an isolated ground for a finding of negligence, but merely as a part of the background for plaintiff's hypothesized negligence in the "manner" of manipulating his left foot; the instruction, reasonably considered, cannot be construed as even authorizing a finding of negligence from a mere failure to look. The generalized complaints that the instruction is vague and confusing are denied. We do not consider any claimed conflict with plaintiff's Instruction No. 1, for no such objection was made to the instruction at the trial, and in the motion for a new trial such objection was wholly unexplained. Civil Rules 70.02 and 79.03, V.A.M.R.

Counsel next assert error in Instruction No. 9. It bore only on the question of damages, and it was as follows: "The Court instructs the jury that plaintiff is not entitled to recover for any impaired or diseased condition he may have had prior to the injury, if any, on April 11, 1957, described in evidence, or for any damages, pain or suffering naturally resulting from any such condition or ailment, if any, which plaintiff had before the injury, if any, on April 11, 1957, which impairment, damage, pain or suffering are not the direct result of the injury, if any, sustained by plaintiff on April 11, 1957.

"The Court further instructs the jury that plaintiff is not entitled to recover for any impaired or diseased condition which he may have acquired after April 11, 1957, or for any damages, pain or suffering naturally resulting from such condition or ailment, if any, which plaintiff acquired after April 11, 1957, which impairment, illness, damage, pain or suffering are not the direct result of the injury, if any, sustained by plaintiff on April 11, 1957."

The principal complaint of this instruction is that it excluded the allowance of damages for an aggravation of prior conditions and the fact that such conditions may have been rendered more difficult to cure. Counsel also suggest that the instruction is in conflict with plaintiff's Instruction No. 2 which, in substance, submitted that the existence of prior abnormal conditions would constitute no defense to the responsibility of defendant for any aggravation of plaintiff's injuries, and that defendant was responsible for all effects which "naturally and necessarily followed the injury"; in other words, that instruction hypothesized a liability for the aggravation of pre-existing conditions. In the motion for new trial counsel again failed to elaborate the assertion of conflict, but in this instance we consider it, because the mere statement of the point and a reading of Instruction No. 2, make the intended reasons obvious.

■■■ It is true that a defendant is generally liable for the aggravation of pre-existing conditions caused by his negligence or a statutory violation. Glore v. Bone, Mo., 324 S.W.2d 633; Widener v. St. Louis Public Service Co., 360 Mo. 761, 230 S.W.2d 698; Looff v. Kansas City Rys. Co., Mo., 246 S.W. 578. The line between an aggravation and the normal progress of a chronic pathological condition may be a hazy one, but under our practice a jury is entitled to make the finding if there is substantial evidence of aggravation. The medical witnesses, even those for plaintiff, did not seem too sure of an aggravation here but defendant makes no point of the sufficiency of that testimony and, with the testimony of plaintiff himself, a submissible issue was made. Does this Instruction No. 9 exclude a recovery for aggravation? We hold that it does not. It states, and correctly so, that plaintiff is

not entitled to recover for diseased conditions which he may have had prior to "the injury" or for any damages resulting therefrom, and which are *not* the direct result of the injury. The "not" is a very material word. The most reasonable inference from this wording is that plaintiff *could* recover for any damage resulting from prior conditions which *were* also the direct result of the injury. This latter inference could only refer to aggravation. The instruction merely states, intelligently read, that plaintiff could not recover damages on account of pre-existing diseases or for the normal development thereof. The first paragraph of this instruction is substantially identical with the one approved in the case of Quigley v. St. Louis Public Service Co., Mo., 201 S.W.2d 169, loc. cit. 172, where it was held that the instruction did not exclude a recovery for aggravation. We see no reason to hold the contrary here. There the Court said, in part, loc. cit. 172: "It treated of two phases of one subject matter, to wit: A prior impaired condition of plaintiff. It first told the jury that plaintiff was not entitled to recover for this prior impaired condition. This is not questioned. The prior impaired condition might continue and inconvenience plaintiff in the future; and, next, with respect to this phase, the instruction informed the jury plaintiff was not entitled to recover for 'damages, pain or suffering naturally resulting from any such condition or ailment, if any.' * * * If the fall aggravated plaintiff's prior impaired condition, such aggravation was not a 'natural' result of a prior impaired condition. Plaintiff was not entitled to recover of defendant for a result that was not a natural and direct, i. e., a proximate result of the fall." Counsel say that by a "clever manipulation of words" it is stated that a pre-existing impairment is required to be the result of the injury. By no reasonable construction can such a meaning be reached. Counsel also argue that the second paragraph compounded the error and "vagueness" in the instruction; that it is so worded that it would exclude the thrombophlebitis which

developed after the injury, although perhaps as an indirect result thereof even if related to a quiescent pre-existing condition. This paragraph, like the first one, merely excluded recovery for impairments, illness, etc., which were not the direct result of the injury. This was the same causative wording used in the preceding paragraph and in the instruction in Quigley, supra; indeed, it is most frequently used. We see no logical reason why the factor of possible causation should have been expanded and liberalized with reference to impairments which may have developed after the original injury. If plaintiff could not prove by substantial evidence that the thrombophlebitis was a result of the injury, there was simply a failure of proof. We do not find that the jury was misdirected, confused or misled. Baccalo v. Nicolosi, Mo., 332 S.W.2d 854, 859. We have chosen to consider this instruction on the merits, although there is authority to the effect that it could not have been prejudicial in any event because the jury found for the defendant and never reached the question of damages. Sparks v. Ballenger, Mo., 373 S.W.2d 955, 957. The contentions regarding Instruction No. 9 are disallowed.

The remaining point concerns defendant's Instruction No. 7, which was as follows: "The Court instructs the jury that even if you find and believe that plaintiff slipped and was injured on April 11, 1957, on the step described in Instruction No. 1, nevertheless, if you further find and believe that plaintiff's slipping was caused by an accumulation of snow or ice upon said step and was not directly caused or contributed to by any improper and unsafe condition of said step other than the accumulation of snow or ice, if so, then plaintiff is not entitled to recover, and your verdict must be for defendant, Gulf, Mobile & Ohio Railroad Company." The objections now made in plaintiff's brief to this instruction were in nowise presented to the trial court by objections at the trial or by assignments in the motion for new trial. No specific objections whatever were made to instruc-

tions at the trial. The entire assignment in the motion for new trial concerning this instruction was that it contained a "misdirection of law" and that there was *"no evidence"* for submission of the presence of snow or ice upon the step. The last point of plaintiff's brief attempts to enlarge the assignment as follows: "Instruction No. 7 submitted by defendant, and given by the court over plaintiff's objections, was an erroneous statement of the law in that it is in conflict with the Rule laid down by the Supreme Court of the United States in Lilly v. Grand Trunk R. Co., Infra, [317 U.S. 612, 63 S.Ct. 33, 87 L.Ed. 497] and Rule 229(d) of the Interstate Commerce Commission, pertaining to locomotives other than steam, in that it instructed the jury that no recovery could be had by plaintiff if his injury was caused solely by reason of an accumulation of ice or snow on the step in question. The rule is that an accumulation of ice or snow on a locomotive is a defect within the purview of the Federal Boiler Inspection Act as an unnecessary peril to life or limb, and that recovery can be had for injuries caused by the accumulation of such foreign substance even if such accumulation is not related to or caused by a mechanical defect, or is of a temporary nature. The rules of the Interstate Commerce Commission governing the inspection and maintenance of locomotives have the force of law and will be considered on appeal though not brought to the attention of the trial court."

■ As thus indicated, plaintiff now attacks the instruction on the ground that, as a matter of law, the presence of snow or ice upon the step did not constitute a defense, even if the snow or ice was the sole cause of the fall and if there was no defect in the step as such; or, in other words, that the permitted presence of snow or ice on the step, in itself, constituted a defect within the meaning of the federal acts and the ICC Rule which counsel say should be considered as a part of the Safety Appliance and Boiler Inspection Act. These

arguments are in nowise included within the appropriate assignment of the motion for new trial; the statement that the instruction contained a "misdirection of law" is wholly meaningless, unless explained. We find that there was substantial evidence of snow or ice on the step which was the only assignment properly raised in the motion.

■ Our Rule 79.03 provides in part as follows: "Where definite objections or requests were made during the trial in accordance with Rule 79.01, including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient. If any specific objections to instruction have not been made at the trial before submission to the jury, then such specific allegations of error in instructions must be set forth in the motion for new trial to preserve the error for review." And see also Rule 70.-02. Our Appellate Courts have rather strictly enforced these Rules by requiring specific objections to all instructions at one place or the other. O'Brien v. City of St. Louis, Mo., 355 S.W.2d 904, 908; Sullivan v. Hanley, Mo.App., 347 S.W.2d 710, 711–712; M.F.A. Co-Op. Ass'n v. Murray, Mo. App., 365 S.W.2d 279, 288–289; Wren v. St. Louis Public Service Co., Mo.App., 355 S.W.2d 365, 372; Nelson v. St. Louis Public Service Co., Mo.App., 360 S.W.2d 356, 361; Dial v. Seven-Up Bottling Co., Mo., 373 S.W.2d 53, 58. In O'Brien, supra, the Court said in part, at loc. cit. 908, of 355 S.W.2d: "The sound and logical reason for this Rule is that specific objections to instructions are to be presented to the trial court where the error, if any, can be corrected without the delay and expense of an appeal. If they are not so presented the party is deemed to have waived them."

It is immaterial that Respondent has not raised this point; we enforce our own rules with or without suggestion. Were

it otherwise, the purpose of the Rules might well be perverted.

The judgment will be affirmed. It is so ordered.

All of the Judges concur.