Harold HARDING, Plaintiff-Appellant,

v.

GRANT CITY SALE BARN, INC., a corporation, and George Young, Defendants-Respondents.

No. 26082.

Missouri Court of Appeals,
Kansas City District.

March 5, 1973.

Thomas J. Stephens, Jerold L. Drake, Stephens & Drake, Grant City, for plaintiff-appellant.

Beavers, Thomson & Beavers, Maryville, for defendants-respondents.

Before DIXON, P. J., and PRITCHARD, and SWOFFORD, JJ.

SWOFFORD, Judge.

This is an appeal from an adverse judgment, after jury verdict, in favor of the defendants-respondents in an action brought against them by the plaintiff-appellant for $5,457.24 claimed to be the balance due by reason of certain transactions between the parties involving the sale of approximately 175 head of cattle. The parties will be referred to as they were in the court below.

After the adverse judgment below, plaintiff filed a motion for a new trial, which was overruled by the passage of time (Rule 78.04) and this appeal followed.

Plaintiff raises two points upon appeal, both directed at alleged error of the trial court in giving Instruction No. 6. This instruction was given as follows:

"Your verdict must be for either or both of the defendants, Grant City Sale

Barn, Inc. or George Young, if you believe:

First, plaintiff's contract with defendant was for goods having a price of Five Hundred ($500.00) Dollars or more, and

Second, the contract was not in writing nor was any memorandum or note thereof made in writing and subscribed by either or both of the defendants, Grant City Sale Barn, Inc. or George Young, or its or his agent or broker, and

*Third, there was no acceptance by either or both of the defendants, Grant City Sale Barn, Inc. or George Young of any part of the goods alleged to have been sold.*" (Emphasis ours)

Plaintiff asserts that this instruction is erroneous for two reasons. *First,* because under the evidence, the defendants had, as a matter of law, accepted the livestock involved and that, therefore, the defense of the Statute of Frauds, as hypothesized in said instruction, was inapplicable under the Uniform Commercial Code, Section 400.2–201(3)(c). *Second,* plaintiff asserts that Instruction No. 6 was erroneous because the court failed to give an instruction defining the term "acceptance" as used in paragraph Third of the instruction.

The first point raised by the plaintiff requires that we briefly summarize the evidence in the record.

The plaintiff was a farmer engaged in the raising of cattle. The defendant, George Young, was the principal owner and stockholder of the defendant Grant City Sale Barn, Inc., a corporation. While the record is somewhat unclear as to exact functions performed by the Sale Barn or the scope of its operations, it appears that it regularly conducted public auctions of various types of livestock, including cows, for breeding, and also for slaughter. It would be reasonable to assume from the record that the defendants sometimes sold livestock as the owners thereof and upon

other occasions acted as auctioneers or agents for the owners. The sales tickets which they furnished to buyers contained the following: "We do not guarantee livestock against sickness or death. We act as agents only."

The evidence showed that in November, 1969, the defendant Young visited the plaintiff's farm, looked over his cattle consisting of cows and calves for the purpose as stated by the plaintiff, "to see about selling my cattle".

The plaintiff testified further that Young placed a value of $50,000.00 on a herd of 176 cattle owned by Young and offered him $47,500.00 for this herd and that Young "finally bought the cattle" on November 29, 1969.

The plaintiff testified that he made no guarantee as to the health of this herd but there is no dispute in the record that the cows were to be sold through the Sale Barn for breeding purposes, or that when such cows were sold for such purpose that they had to be accompanied by a health certificate that they were free from brucellosis, which is a disease which affects the ability of cows to reproduce and causes them to abort.

The plaintiff testified that he had such health certificates on some but not all of his cows, but he did not deliver them at any time to the defendants; that the state veterinarian took these papers after the sale and they had not been returned and were not produced at trial. The plaintiff was positive in his testimony that this herd had been sold to defendant Young on November 29, 1969 as an outright sale rather than employing Young's services as an auctioneer.

Defendant Young testified that he had solicited plaintiff's herd for a special cow sale; that there was a price agreed upon of $47,500.00 but that such agreement was contingent upon the proper tests being made and a showing that the herd was free from brucellosis and he definitely stated "they weren't my cows because they hadn't

passed the test". He also testified that no one would buy a cow for breeding purposes without a health certificate that it was free from brucellosis.

All parties to this transaction admitted that it was completely oral in nature and that nothing pertaining to it was ever reduced to writing.

The record further shows that the plaintiff delivered this herd to the Grant City Sale Barn on December 10, 1969, and that on that same date Dr. J. B. Taylor, Veterinarian, tested the herd for brucellosis and found that 4 of the cows had brucellosis and two others were suspect.

The evidence was that when infected cows are discovered in a herd, the whole herd is subject to quarantine and, as we understand the record, none of the cows can be sold for breeding purposes until the herd is free of the disease and proper health certificates issued.

When the disease was discovered in the herd, defendant Young called the plaintiff to the Sale Barn and he was advised of the results of the tests and it was suggested that he take the cows back to his farm for quarantine or that the herd be sold at auction for slaughter rather than for breeding. According to Doctor Taylor, 163 head were sold by the pound through the Sale Barn, for slaughter. The proceeds of the sale amounted to $42,042.76 which was remitted to the plaintiff. This suit involves a claim for the difference between that amount and the $47,500.00.

The real dispute in this record revolves around whether or not upon the discovery that the plaintiff's herd was infected with brucellosis the defendant Young rejected or accepted them, and if he had acted within a reasonable time.

Upon this record, we have reached the conclusion that these matters were properly for jury determination and that the defendants had not accepted the subject matter of the sale as a matter of law.

Before considering the applicable terms of the Uniform Commercial Code (which are controlling here) it is appropriate to state that plaintiff's principal reliance upon his right to recovery reposes in a decision of the Supreme Court of Missouri in 1926. Plaintiff's brief states: "Appellant's cause of action is based upon the case of Barton v. Dowis [315 Mo. 226], 285 S.W. 988 (1926)."

It is true that the Barton case held that the doctrine of *caveat emptor* applied to the sale of animals. A careful reading of the Barton case, however, indicates that it does not support plaintiff's position. Barton involved the sale of hogs for breeding purposes that were infected with cholera. The court in Barton specifically said, 1. c. 989:

"Where an article is sold for a special purpose, it carries with it a warranty that it is fit for that purpose. And that applies to animals. * * *"

The court further said:

"If the hogs were afflicted with disease which rendered them unfit for breeding purposes, then that defect, it may be conceded, would be covered by the implied warranty. * * * There is no evidence to show that the hogs purchased by the plaintiffs were not good for breeding purposes—the purpose for which they were bought."

We do not consider Barton v. Dowis supportive of plaintiff's position, particularly in view of the present status of the law of sales, as hereinafter discussed.

In the case of Moore v. Miller, 100 S.W. 2d 331, 334–335 (Mo.App.1936), the court held that a sale of animals for certain purposes carried with it "by implication that the article is free from hidden defects that would impair its usefulness for such purpose." See also, Mitchell v. Rudasill, 332 S.W.2d 91, 96, 87 A.L.R.2d 1309 (Mo.App. 1960).

The matter before us more specifically involves application of Article 2 of the Uni-

form Commercial Code, Laws 1963, relating to "Sales" rather than the common law principles enunciated in the foregoing decisions.

The defense in this action as hypothesized in Instruction No. 6 relates to Section 400.2–201 V.A.M.S., which provides, with certain exceptions, that any contract for the sale of goods for the price of $500.00 or more is not enforceable unless there is some writing evidencing the agreement of the parties. Admittedly, no such writing exists in this case.

An exception to this general statutory provision is Section 400.2–201(3)(c), which provides:

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable.

\* \* \* \* \* \*

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 400.2–606)."

Section 400.2–606 provides as follows:

"What constitutes acceptance of goods. (1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

(b) fails to make an effective rejection (subsection (1) of section 400.2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them. \* \* \*"

Section 400.2–602 provides:

"Manner and effect of rightful rejection.

(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller. \* \* \*

\* \* \* \* \* \*

(b) if the buyer has before rejection taken physical possession of goods \* \* \* he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(c) the buyer has no further obligations with regard to goods rightfully rejected.

\* \* \*"

Section 400.2–513 provides in part as follows:

"Buyer's right to inspection of goods.

(1) Unless otherwise agreed \* \* \* where goods are tendered or delivered or identified to the contract for sale, the buyer has the right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner. When the seller is required or authorized to send the goods to the buyer, the inspection may be after their arrival.

\* \* \*"

It is apparent from this record in the light of the above statutes that when the plaintiff delivered the herd of cattle to the Grant City Sale Barn, the defendants had a reasonable time in which to inspect the cattle and either accept or reject them. It is undisputed that on the very day of delivery, December 10, 1969, in compliance with and pursuant to this statutory authority and under the mandatory provisions of Sections 267.470–267.545 R.S.Mo., V.A.M.S. (Laws 1955 as amended), "Brucellosis Control and Eradication Law", the brucellosis tests were run by Doctor Taylor and on that same day the plaintiff was advised of the positive results of such tests indicating the presence of this infectious and contagious disease in his herd.

Both defendant Young and Doctor Taylor testified that on December 10, 1969, the plaintiff was given the option to take the herd back to his farm for quarantine and further testing or to sell the cows for slaughter rather than for breeding, and that plaintiff chose the latter course and received the proceeds of such sale.

 In our view, the fact of whether or not the defendants had accepted or rejected the "goods" was a question for the jury and could not be ruled as a matter of law.

Plaintiff cites two Missouri authorities in addition to Barton v. Dowis, supra. Although both of these were decided after the effective date of UCC, we find neither opinion controlling and both clearly distinguishable.

Buxton v. Horn, 452 S.W.2d 250 (Mo. App.1970), involved the sale of cabinets for use in a new home. The general contractor had ordered them in writing, and accepted and installed them in the home. No rejection was communicated to the seller for 4 months. The contractor was held liable in a court-tried case.

The case of Stephens Industries v. American Express Co., 471 S.W.2d 501 (Mo.App. 1971) (another court-tried case) involved the sale of a machine which was delivered to the buyer, used by it, serviced by the seller, and then after 4½ months the buyer attempted to reject the machine as defective. The court held that the buyer had not rejected the machine within a reasonable time after delivery as required by UCC, and that it was liable for the purchase price.

There was no error in giving Instruction No. 6 upon the first ground asserted by plaintiff.

Upon the basis of his second asserted error in Instruction No. 6, plaintiff asks us to reverse the judgment because the court did not define for the jury the term "acceptance" as used in said instruction.

The record before us shows that the plaintiff made no such objection to the instruction at trial; did not request the court to give such a definition instruction; did not offer such a definition instruction, and did not assert this alleged error in his motion for a new trial. The asserted error appears for the first time in his brief and, therefore, is not properly preserved for our review. Rule 70.02; Rule 79.03; Rule 84.-13(a), V.A.M.R. Our courts have properly held that alleged errors must be first presented at the trial or in the motion for a new trial to the trial court, and that these Rules must be strictly enforced. Chambers v. City of Kansas City, 446 S.W.2d 833 (Mo.1969); Miller v. Gulf Mobile and Ohio Railroad Co., 386 S.W.2d 97 (Mo.1964); O'Brien v. City of St. Louis, 355 S.W.2d 904 (Mo.1962); Missouri State Park Bd. v. McDaniel, 473 S.W.2d 774 (Mo.App. 1971). Under the compelling mandate of these and many other decisions, we cannot ignore the express provisions of these rules in the case before us.

The judgment is affirmed.

All concur.